# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 23, 2010

Lyle W. Cayce
Clerk

No. 09-40337
c/w 09-40826

TINA LEWALLEN,

Plaintiff-Appellee

v.

CITY OF BEAUMONT,

Defendant-Appellant

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 1:05-CV-733

Before WIENER, PRADO and SOUTHWICK, Circuit Judges.

WIENER, Circuit Judge:[*]

Defendant-Appellant the City of Beaumont, Texas ("the City") appeals a jury verdict rendered against it for violating the constitutional rights of Plaintiff-Appellee Tina Lewallen, a female police officer, after the City's Police Department ("the Department") failed to select her for the position of Detective. The City also challenges the sufficiency of the evidence of past and future compensatory damages and the amount of the district court's awards of attorneys fees and costs. We affirm the jury's verdict and its award of past

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

compensatory damages, as well as the district court's awards of attorneys costs and fees; however, we vacate the jury's award of future compensatory damages.

## I. FACTS AND PROCEEDINGS

Tina Lewallen joined the Department in 1995. In October of 2003, a Detective position became available in the Special Crimes Unit. Although the position of Detective did not carry an increase in salary for a Specialist (which was Lewallen's rate at the time), it came with other benefits, was intellectually more demanding, and was generally regarded by the members of the Department as a promotion.

The Department interviewed only one candidate—Keith Breiner—and rejected him. (Breiner had one of the worst disciplinary records in the Department and showed only moderate interest in the position.) Shortly thereafter, the Department opened two Detective positions (another had recently become vacant) to all Specialists. Four candidates were interviewed: Lewallen, Breiner, one additional female, and one additional male. Breiner and the other male applicant were selected even though they were objectively less qualified. Lewallen claims that sex discrimination was the motivating force behind the Department's selection of the two less qualified males in preference to her.

After filing an administrative complaint with the City to no avail, Lewallen filed another with the EEOC. She then filed this lawsuit in the district court under 42 U.S.C. § 1983.[1] In it, she claimed a violation of the Equal Protection Clause of the Fourteenth Amendment, as well as a violation of state law. At the conclusion of a protracted, bitterly contested trial, the jury found for Lewallen on both claims. The jury awarded Lewallen $50,000 in past compensatory damages and $25,000 in future compensatory damages; she

---

[1] On January 17, 2005, Lewallen was promoted to Investigator and remained employed by the Department as of the time of this appeal.

received no award of economic damages. The district court awarded Lewallen $428,421.75 in attorneys fees and $15,873.11 in costs.

The following sequence of motion practice ensued:

- December 1, 2008: The City filed a Rule 50 motion for judgment as a matter of law ("JMOL").

- December 8, 2008: That motion was denied.

- January 15, 2009: The district court entered final judgment against the City.

- January 30, 2009: The City filed a supplemental Rule 50 JMOL motion.

- February 23, 2009: The district court denied the City's supplemental motion.

- March 11, 2009: The City filed a Federal Rule of Appellate Procedure 4(a)(5) motion to extend the time within which to perfect its appeal.

- March 23, 2009: The City filed its notice of appeal while its March 11, 2009 Rule 4(a)(5) extension motion was still pending before the district court.

- April 16, 2009: The district court granted the City's March 11, 2009 Rule 4(a)(5) extension motion, allowing the City ten days to file an amended notice of appeal.

- April 24, 2009: The City filed its amended notice of appeal.

## II. ANALYSIS

### A. Standard of Review

We will affirm a jury verdict unless "a reasonable jury would not have a legally sufficient evidentiary basis to find" as it did.[2] No legally sufficient evidentiary basis exists when "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable

---

[2] Fed. R. Civ. P. 50(a)(1).

men could not arrive at a contrary verdict."[3]    "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record . . . , must draw all reasonable inferences in favor of the nonmoving party, and [ ] may not make credibility determinations or weigh the evidence."[4]

## B. Timeliness of the City's Appeal

Lewallen asks us to dismiss the City's appeal for lack of appellate jurisdiction. In a civil case, a party seeking to appeal a district court's judgment must do so within thirty days after the final judgment is filed.[5] If the putative appellant timely files a motion pursuant to Rule 50 of the Federal Rules of Civil Procedure, however, Federal Rule of Appellate Procedure 4(a)(1)'s thirty-day period for filing the appeal does not begin to run until the district court rules on the Rule 50 motion.[6]

As noted above, the district court entered final judgment against the City on January 15, 2009, and the City filed its Notice of Appeal on March 23, 2009. Lewallen contends that this fell outside Rule 4(a)(1)'s thirty-day window and is thus invalid. She argues that the City's January 30, 2009 supplemental JMOL motion under Rule 50 did not toll the running of Rule 4(a)(1)'s thirty-day appeal period because the supplemental JMOL motion contained essentially the same arguments as had the City's initial JMOL motion of December 1, 2008. She correctly notes that a second Rule 50 JMOL motion will not toll the running of the Rule 4(a)(1) thirty-day time in which to file a notice of appeal *unless* such

---

[3] *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000) (quotation omitted).

[4] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

[5] Fed R. App. P. 4(a)(1).

[6] Fed. R. App. P. 4(a)(4)(A)(I).

4

second Rule 50 motion presents "at least one completely different ground for relief from the judgment."[7]

We need not consider whether the City's supplemental JMOL motion of January 30, 2009 was substantially similar to its initial JMOL motion of December 1, 2008, because the district court validly extended the time within which the City could file its notice of appeal. A district court may extend the time for filing a notice of appeal if (1) the potential appellant files a motion for such extension no later than thirty days after the expiration of the original time limit for filing its notice of appeal and (2) that party's failure to file within the original time limit results from excusable neglect.[8] Here, the City petitioned for such an extension on March 11, 2009, which was within the thirty-day period allowed by Rule 4(a)(5).[9] The district court granted the City's March 11, 2009 extension motion, concluding that it was excusable neglect for the City to believe that its January 30, 2009 JMOL motion had tolled the running of the time for filing its notice of appeal.

Lewallen asserts that a district court's power to grant an extension evanesces ipso facto when a notice of appeal is filed. To repeat, the City's notice of appeal was filed on March 23, 2009; its earlier Rule 4(a)(5) extension motion had been filed on March 11, 2009; that motion was granted on April 16, 2009, after the City had filed its notice of appeal. We have previously held that a timely but insufficient notice of appeal does not divest the district court of the power to grant an extension within which to file a sufficient notice of appeal.[10]

---

[7] *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 85 (5th Cir. 1992).

[8] Fed. R. App. P. 4(a)(5).

[9] Even though the motion stated that it was filed under Fed. R. Civ. P. 58, the district court properly construed it as one filed under Rule 4(a)(5) of the Fed. R. App. P.

[10] *See Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 206 (5th Cir. 1993).

Although there was no deficiency in the City's initial notice of appeal, there is a separate basis for the district court's authority to rule on the City's March 11, 2009 motion for extension of time in which to perfect its appeal, irrespective of the fact that the court did so after the City filed its initial notice of appeal.  As noted, the City filed its notice of appeal *after* it had filed its Rule 4(a)(5) extension motion, but *before* the district court had ruled on that pending Rule 4(a)(5) extension motion.  Yet, if that pending Rule 4(a)(5) motion were thereafter to be denied, the City's deadline for filing a notice of appeal would expire—unless, of course, the January 30, 2009 supplemental JMOL motion had tolled the running of Rule 4(a)(5)'s thirty-day time limit.  Under such circumstances, a Rule 4(a)(5) movant should not be prejudiced simply because the district court fails to rule on the pending Rule 4(a)(5) extension motion before the deadline that would obtain if the district court were to deny the extension motion.

We will not disturb a district court's grant or denial of an extension motion unless we find an abuse of discretion.[11]  Inasmuch as we perceive none here, the district court's ten-day extension ruling stands.  Consequently, the City's notice of appeal was timely filed, and we have jurisdiction to hear this appeal.

## C.  Equal Protection Violation

Lewallen alleged a violation of the Equal Protection Clause under the aegis of 42 U.S.C. § 1983.  To succeed, she must show that (1) she was deprived of a right arising under the United States Constitution or federal law, and (2) the offending party acted under the color of state law.  Neither the City nor anyone else disputes that the Department was acting under color of state law at all relevant times.  Instead, the City contends that Lewallen has failed to prove that the Department violated her Equal Protection rights.  To succeed on this claim, Lewallen had to show that (1) she suffered an adverse employment action,

---

[11] *See Campbell v. Bowlin*, 724 F.2d 484, 488 (5th Cir. 1984).

6

(2) it was based on sex discrimination, and (3) a policy or custom of the City was the motivating force behind that sex-based adverse action.

### 1. Adverse Employment Action

Lewallen had to prove that she suffered an adverse employment action.[12] Standing alone, the denial of a lateral transfer cannot constitute an adverse employment action,[13] and the City's Collective Bargaining Agreement places Detectives and Specialists on the same pay scale and personnel grade. Lewallen therefore had to show that a move from Specialist to Detective would constitute a promotion. Only then would a discriminatory denial of such a move constitute an adverse employment action.

Lewallen adduced sufficient evidence to bear that burden. It is indisputable from the plethora of evidence in the record that the jury could reasonably find that the position of Detective is so objectively superior to that of Specialist that a move from the latter to the former would qualify as a promotion.[14] Among other things, the position of Detective is more intellectually challenging, has better benefits, has better work hours, and is widely recognized as more prestigious than the position of Specialist.[15] We are satisfied that Lewallen's jury had sufficient evidence before it to find that denial of her move

---

[12] *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

[13] *See Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999).

[14] *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 614 (5th Cir. 2007) (ruling that a denial of transfer may be adverse employment action if the new position was objectively better, regardless of changes in pay or benefits).

[15] *See id.* (noting that a trier of fact may look to such factors as the increase in pay or benefits, the responsibilities and duties, the opportunities for career development, the skill and education required, the competitive nature of the selection process, and the objective prestige of the position).

from Specialist to Detective deprived her of a promotion,[16] thereby qualifying that denial as an adverse employment action.

## 2. Sex Discrimination

The jury had sufficient evidence before it to conclude that Lewallen suffered sex discrimination. Even though a female employee need not show that she was a more qualified applicant than her male competition to prove sex discrimination in employment,[17] Lewallen made this showing. She had numerous attributes that made her more qualified for the position of Detective than either of the male applicants who were selected ahead of her, including (1) a college degree; (2) more experience in street policing; (3) an outstanding reputation; (4) extra law-enforcement training; and (5) receipt of the Chief of Police Commendation, a highly prestigious honor awarded yearly to but a few outstanding police officers. The contrast between Lewallen and Breiner is the most stark among the four applicants. In addition to the fact that Breiner did not have a college degree and had less training and experience than Lewallen, he had, for example, been suspended for drawing his gun on a group of college students while he was out drinking. Based on the extensive record evidence of the disparity between the relative qualifications of Lewallen and Breiner, a reasonable jury could find that Lewallen was the better of those two applicants —indeed, the best among all four applicants—and that the Department's proffered reasons for choosing the two male applicants ahead of Lewallen were but gossamer pretext for sex-based discrimination.

---

[16] Indeed, the Department's attorney had stipulated, during the trial of a different employment lawsuit, that transfer from Specialist to Detective is a promotion. The City contends that this statement is inadmissible and was not a conscious admission in the previous case. We neither make a determination as to its admissibility, nor rely on this observation in our decision.

[17] *See Julian v. City of Houston*, 314 F.3d 721, 728 (5th Cir. 2002) (in the ADEA context).

The City's attempt to rehabilitate the process that produced the selection of the lesser qualified male applicants by painting it as subjectivity on the part of the selectors is wholly unavailing. The law is well settled that the subjective nature of a review or selection process provides no refuge for the employer. "[A]n employer may not 'utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process . . . is challenged as discriminatory.'"[18] The jury was free to conclude that the Department's subjectivity-based explanations were merely pretextual in the face of the proven nature of the review process.

### 3. Policy or Custom as the Moving Force

As Lewallen chose to sue the City under § 1983, she had to show that her sex-based adverse employment action was causally connected to a policy, custom, or act of an official policy maker.[19] Specifically, she had to prove by a preponderance of the evidence that there existed "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."[20] Here, too, we are satisfied that the jury had before it sufficient evidence to conclude that (1) in the Department, sex discrimination was "so common and well settled as to constitute a custom that fairly represents municipal policy,"[21] and (2) the policy maker in charge had actual or constructive knowledge of the situation.

The jury heard unchallenged evidence that, in 1993, the chief of police—who none denied is a "policymaker"—received the findings of an

---

[18] *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001) (quoting *Crawford v. W. Elec. Co.*, 614 F.2d 1300, 1315 (5th Cir. 1980)).

[19] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978).

[20] *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

[21] *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam).

extensive internal investigation which showed that approximately one-half of the female officers in the Department had reported experiencing sex discrimination. That report included, for example, details of a number of threats by male officers not to back up female officers in times of trouble, refusals by male officers to ride in squad cars with female officers, refusals by male officers to include female officers in briefings, incidents of male officers disrupting female officers while they were calling in reports, and even one occasion in which a male officer discharged his firearm at a firing range while a female officer was down range. The jury heard a number of women testify about the rampant sex discrimination in the Department, including evidence that women feared retaliation for complaining of such occurrences or voicing their concerns about them. The jury's finding of the existence of the requisite policy or custom here, and the knowledge thereof and acquiescence therein by one or more of the City's "policy makers," is supported by substantial evidence that, when credited by the factfinder, is more than sufficient.

Lastly, Lewallen had to prove by a preponderance of the evidence that the instant custom or policy was the "moving force" behind the adverse employment action that she experienced. Even standing alone, the record evidence of sex discrimination is likely sufficient for the jury to find that such discrimination was the moving force behind the Department's hiring practices in general and the adverse employment action experienced by Lewallen in particular. But there is also specific record evidence of discrimination in the Department's hiring practices that the jury could have found persuasive. One female officer recounted a situation in which she complained to the chief of police regarding sex discrimination as the basis of her being denied a position, adding that she never received a meaningful answer. Another female officer reported having received threatening phone calls after she registered the highest score on a written examination for promotion to Lieutenant. The chief of police at the time had knowledge that the male officers wanted this female officer to be denied the

10

position of Lieutenant to facilitate promoting the male officer who had received the second highest score for the position. Even though that female officer was eventually promoted despite such sex-based obstructionism, the situation speaks to the insidious discrimination imbedded in the Department's hiring practices. In addition, Lewallen proffered testimony of other female officers further describing the Department's discriminatory hiring practices and its conscious refusal to take any action whatsoever to eliminate those practices. We are satisfied that there is more than sufficient record evidence on the basis of which the jury could reasonably conclude that the longstanding and widely recognized sex discrimination throughout the Department was the moving force that produced the adverse employment action suffered by Lewallen.

In sum, we conclude that Lewallen bore her burden of adducing sufficient evidence to prove a policy or custom in the Department condoning and even fueling pervasive sex discrimination, and that such discrimination produced the adverse employment action that she suffered when she was not selected for promotion to Detective. The totality of the record evidence is sufficient for the jury to have found that the City's policy of consciously permitted, widespread sex discrimination in the employment practices of the Department directly produced the adverse employment action that Lewallen incurred, in violation of her constitutional right to Equal Protection.

## D. Compensatory Damages

The jury awarded Lewallen $50,000 in past compensatory damages. "We review with deference damage awards based on intangible harm, because the harm is subjective and evaluating it depends considerably on the demeanor of witnesses."[22]

Lewallen testified to injuries that, if credited, could lead a jury to find that the damages she incurred in the past were "worth" $50,000. She claimed to have

---

[22] *Giles v. General Elec. Co.*, 245 F.3d 474, 487-88 (5th Cir. 2001) (quotation omitted).

11

suffered severe migraine headaches which lasted for up to three days and were so severe that they would cause vomiting. She further testified that these migraines would also constrain her ability to eat, move, and even get out of bed. Not only did she suffer these intense migraines, but she experienced insomnia as well. This evidence of Lewallen's harms is sufficient to support the jury's award of $50,000 in past damages.[23]

As noted earlier, the jury also awarded Lewallen $25,000 in future compensatory damages. Our review of the record evidence fails to convince us of its sufficiency to support this award. Lewallen had been promoted to Investigator[24] before this case went to trial, and she did not adduce evidence sufficient to demonstrate the likelihood that she will suffer any physical effects or mental anguish in the future as a result of the constitutional violation that she experienced in the past. Neither did Lewallen counter the City's arguments against awarding her future compensatory damages. We therefore vacate the jury's award of future compensatory damages and render a take-nothing judgment for the City on this claim.

## E. Attorneys Fees and Costs

The district court awarded Lewallen attorneys fees of $428,421.75 and costs of $15,873.11. We review the court's findings of fact for clear error and its application of the well-known *Johnson* factors for abuse of discretion.[25] When we do so, we perceive no reversible error in the district court's analysis or conclusion.

---

[23] *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1053 (5th Cir. 1998) (noting that mere anger and frustration will not suffice for an award for mental distress, but "sleeplessness, anxiety, stress, marital problems, and humiliation" would).

[24] The parties' briefs indicate that the titles of "Inspector" and "Detective" are synonymous.

[25] *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

The court conducted an extensive and thorough review, then issued a thirty-six-page order detailing its analysis. The court based its award on affidavits from experienced and well-credentialed attorneys who demonstrated a thorough grasp of the relevant issues, and on cogent determinations of the complexity of the case, its length, and the duration and intensity of the discovery process. In addition, the City failed to produce contrary evidence sufficient to support its asserted infirmity in the district court's definition of the relevant legal community as the Eastern District of Texas, rather than just the City of Beaumont.[26]

The stark disparity between the compensatory damages awarded to Lewallen by the jury and the attorneys fees awarded to her counsel by the district court does not present a unique phenomenon in cases such as this which reflect the existence of broader and more pervasive situations of long standing, rather than just a single experience of one or a few plaintiffs. There is no strict rule or maximum limit on the permissible ratio of fees to damages. For example, the Supreme Court has affirmed an award of roughly $245,000 in attorneys fees for obtaining an award of damages in the neighborhood of only $33,000.[27] Even though we have stated that "the most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained,"[28] counsels' representation of Lewallen required an inordinate volume of specialized legal work, particularly given the indispensable need to prove both a policy or custom and the causal connection between that policy or custom and

---

[26] Indeed, other courts have blessed a judicial district as the relevant market. *See, e.g., Jimenez v. Wood County, Texas*, 2009 WL 2744611 at *3 (E.D. Tex. Aug. 25, 2009); *McClain v. Lufkin Indus., Inc.*, 2009 WL 921436 at *6 (E.D. Tex. Apr. 2, 2009); *see also League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228, 1234 n.5 (5th Cir. 1997) (Although the court did not rely on the affidavits used by LULAC in this case to define the relevant market as the federal district, it did not disclaim the affidavits.).

[27] *See Riverside v. Rivera*, 477 U.S. 561 (1986).

[28] *Migis*, 135 F.3d at 1048.

the discriminatory action taken against Lewallen.  Neither is the fact lost on us that counsel for the City accumulated a very substantial number of billable hours in conducting the representation of its municipal client here.

We also agree with the district court that the overarching and indispensable hurdle that counsel for Lewallen had to overcome in the prosecution of her suit was the need to prove long-standing and extensive sex discrimination and the Department's awareness of the situation.

Under the totality of the circumstances of this protracted and hard-fought litigation, the facially disproportionate ratio of compensatory damages to attorneys fees and costs is neither surprising nor unreasonable.  Perceiving neither clear factual error nor abuse of discretion by the district court, we affirm its award of fees and costs.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court as to the sufficiency of the evidence to support the jury's findings of liability and award of past compensatory damages. We also affirm the district court's award of attorneys fees and costs.  We reverse the jury's award of future compensatory damages, however, and render a take-nothing judgment for the City on Lewallen's future-damages claim.

AFFIRMED in part; REVERSED and RENDERED in part.