# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 2, 2020

Lyle W. Cayce
Clerk

No. 19-40553

Joshua Edwards, *individually and on behalf of others similarly situated*;
Francisco Gutierrez; Humberto J. Morales; Ricky
Martin; Ernesto Flores; Et Al.,

*Plaintiffs—Appellants Cross-Appellees*,

*versus*

4JLJ, L.L.C., *doing business as* J4 Oilfield Services; John
Jalufka,

*Defendants—Appellees Cross-Appellants*,

---

Rodrigo Tarango, Jr.

*Plaintiff—Appellant Cross-Appellee*,

*versus*

4JLJ, L.L.C., *doing business as* J4 Oilfield Services; John
Jalufka,

*Defendants—Appellees Cross-Appellants*.

---

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 2:15-CV-299
USDC No. 2:18-CV-78

No. 19-40553

Before Wiener, Graves, and Willett, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

4JLJ, LLC provides oil well pump and frack services. A group of its employees sued 4JLJ under the Fair Labor Standards Act, alleging that 4JLJ violated the FLSA's overtime wage mandates. 4JLJ paid the Employees two different types of bonuses—a stage bonus and a performance bonus—and the Employees argued that both ought to have been included in the "regular rate" for the purposes of overtime calculation. The case was tried before a jury, which held for 4JLJ in all respects. After the verdict, the Employees filed two identical motions for judgment as a matter of law, which were both denied. The district court, however, did award sanctions to the Employees over a contentious discovery dispute. The Employees appeal the denial of their motions for judgment as a matter of law, and 4JLJ appeals the sanctions award.

Our holdings are something of a mixed bag. We conclude that the performance bonuses—but not the stage bonuses—should have been included in the regular rate as a matter of law. So we reverse and remand for the district court to consider all relief warranted. As for the sanctions award, the district court did not abuse its discretion, so we affirm.

I

4JLJ is a single-member LLC, wholly owned by Defendant John Jalufka. 4JLJ hired the Employees as frack and pump hands. On top of their base pay, 4JLJ paid the Employees two types of bonuses. Neither bonus was considered in the calculation of the Employees' overtime wages—which lies at the heart of the Employees' claims on appeal. The first bonus was a "stage bonus." The fracking of a well occurs in identifiable stages, and 4JLJ offered a bonus for each stage completed. Stage bonuses were not memorialized in writing.

No. 19-40553

4JLJ also offered a quarterly "performance bonus," which, unlike the stage bonus, was memorialized in a written contract given to the Employees upon hiring. In all capital letters and in a large typeface, the contract said: "THIS BONUS IS NOT TO BE EXPECTED, IT IS TO BE EARNED." The contract went on to say: "IF YOU ARE HERE JUST TO GET A PAYCHECK, AND GET BY WITH AS LITTLE WORK AS POSSIBLE, DON'T EXPECT TO GET A PERFORMANCE BONUS." The contract also provided the criteria by which the Employees would be evaluated for performance bonus consideration.[1]

The performance bonus was calculated using a pay scale applied to three classes of employees:

> A Class: $1.00/hour
>
> B Class: $0.75/hour
>
> C Class: $0.50/hour

So if 4JLJ chose to give an employee a performance bonus, the bonus was calculated by adding an amount, shown above, to each hour the employee worked that quarter.

The Employees filed a collective action complaint, alleging that 4JLJ[2] violated the FLSA's overtime wage mandates by failing to include these

---

[1] The contract listed positive factors that weighed in favor of bonus eligibility as well as negative factors that hurt one's bonus prospects.

[2] John Jalufka was later joined as a defendant. But we refer to both defendants simply as 4JLJ throughout.

bonuses as compensation in the "regular rate"—which, under the FLSA, is used to calculate overtime wages.[3]

Before trial, the parties engaged in a bitter discovery brawl. The Employees made a production request for GPS data on work vehicles driven by the Employees,[4] and 4JLJ challenged this request. 4JLJ claimed that it didn't have the data. A third-party provider, Fleetmatics, accumulated and stored the data. And, 4JLJ claimed, it wasn't 4JLJ's burden to retrieve the data; the Employees should have gone to Fleetmatics directly.[5]

The Employees indicated that they would file a motion to compel but never followed through with the threat. Instead, seven months later, the Employees sent more production requests to 4JLJ—again asking for the same GPS data. 4JLJ again objected to the request as overly broad, burdensome, and not limited in time or scope. 4JLJ also stated that it had "none" of the data.

Five days before the final pretrial conference, the Employees filed a brief with the court, complaining about 4JLJ's failure to provide the requested GPS data. In that brief, the Employees "assumed that [the data]

---

[3] The Employees averred five bases for recovery: (1) 4JLJ failed to maintain adequate time records; (2) 4JLJ paid employees on a task basis, as opposed to per hour; (3) 4JLJ underpaid employees relative to actual hours worked; (4) 4JLJ failed to pay overtime wages for work exceeding 40 hours in a week; and (5) 4JLJ failed to include bonuses in overtime wages. The Employees also contended that Jalufka was personally liable for the actions of 4JLJ. The Employees dropped the first four issues on appeal. Now, their remaining arguments are that 4JLJ should have included bonuses in overtime calculations and that Jalufka is personally liable.

[4] The GPS data subject to this discovery dispute has zero bearing on the substantive issues pursued on appeal (beyond its impact on sanctions).

[5] It later became clear that 4JLJ's contractual agreement with Fleetmatics enabled 4JLJ to access the data. But 4JLJ claims that it didn't know this because it wasn't 4JLJ's practice to access or download data from Fleetmatics.

has since been lost, and thus spoliated by Defendants." As the Employees had never filed a motion to compel, this was the first time the GPS issue came before the court. At the final pretrial hearing a few days later, 4JLJ told the court that it would do everything in its power to get the data. But 4JLJ warned that it could take time.

The search for this data caused massive delays, and in December 2017, two months later, the Employees filed a motion for sanctions. In their motion, they claimed that 4JLJ had earlier denied the existence of the contested data. And they continued to assert that important portions of the data had been lost or destroyed due to 4JLJ's dilatory tactics. The district court imposed two sanctions on 4JLJ: (1) an adverse inference jury instruction and (2) a burden shifting sanction. After it became clear that no data was spoliated, the district court removed the adverse inference sanction but declined to vacate the burden shifting sanction. It also denied 4JLJ's request to proceed with an interlocutory appeal to challenge the sanction.

The case was tried before a jury for five days. After both sides rested, the Employees moved for a directed verdict, which the court denied. On February 26, 2019, the jury found in favor of 4JLJ on every issue. A flurry of motions and orders followed:

- On March 12, the Employees renewed their motion for judgment as a matter of law (or alternatively for a new trial). That same day, the Employees separately moved to recover attorney fees and expenses related to the discovery dispute.

- On March 27, the district court entered a Final Judgment order in favor of 4JLJ, and it issued an order awarding monetary sanctions to the Employees.

- On April 10, the Employees filed a second motion for judgment as a matter of law or for a new trial— substantively identical to the first. And 4JLJ moved for

costs, as prevailing parties, under Federal Rule of Appellate Procedure 54(d).

- On May 20, the court denied the Employees' second request for judgment as a matter of law or a new trial.

- On June 3, the district court issued an "Order on Request for Bill of Costs," awarding 4JLJ only $14,920 of the $44,553 it requested. These orders finally disposed of all the parties' claims.

- On June 12, the Employees filed a notice of appeal.

- On June 24, 4JLJ filed a notice of cross-appeal, challenging the district court's attorney-fee sanction and its allocation of Rule 54(d) costs.

## II

Let's start with jurisdiction. 4JLJ did not make a jurisdictional argument in its briefing. But at oral argument, 4JLJ contended that the Employees' notice of appeal was late and that this tardy notice is a jurisdictional defect. Whether jurisdictional arguments are raised late (or not at all), "we must always be sure of our appellate jurisdiction."[6] 4JLJ is right that the Employees' notice of appeal was late.[7] But 4JLJ is wrong that this

---

[6] *Castaneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999).

[7] A party has 30 days to file a notice of appeal. FED. R. APP. P. 4(a)(1)(A). But that 30-day clock will restart upon the filing of a motion for judgment as a matter of law under Rule 50(b). FED. R. APP. P. 4(a)(4)(A). In that case, the 30-day time period to appeal starts "from the entry of the order disposing of the last such remaining motion." FED. R. APP. P. 4(a)(4)(A). However, a "second Rule 50 JMOL motion will not toll the running of the Rule 4(a)(1) thirty-day time in which to file a notice of appeal *unless* such a second Rule 50 motion presents 'at least one completely different ground for relief from the judgment.'" *Lewallen v. City of Beaumont*, 394 F. App'x 38, 41 (5th Cir. 2010) (unpublished) (emphasis in original) (quoting *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 85 (5th Cir. 1992)).

Here, the district court's March 27 Final Judgment order did not specifically reference the Employees' March 12 renewed motion for judgment as a matter of law. But

late filing spoils our jurisdiction. In *Hamer v. Neighborhood Housing Services of Chicago*, the Supreme Court made clear that "a provision governing the time to appeal in a civil action qualifies as jurisdictional only if Congress sets the time."[8] If not prescribed by Congress, a time limit is simply a "mandatory claim-processing rule."[9] And these types of rules "may be waived or forfeited."[10] The Federal Rules of Appellate Procedure were promulgated by the Supreme Court, not by Congress.[11] So the Employees' failure to file a timely notice of appeal does not affect our appellate jurisdiction. And because

---

when a district court "enters a final judgment, it has implicitly denied any outstanding motions, even if the court does not explicitly deny a particular motion." *Snider v. L-3 Commc'ns Vertex Aerospace, L.L.C.*, 946 F.3d 660, 667 (5th Cir. 2019) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 369 n.* (5th Cir. 2002)). The Employees' second renewed motion for judgment as a matter of law on April 10 was substantively identical to the first—presenting no new grounds for relief—so the second motion did not toll the running of Rule 4(a)(1)'s thirty-day appeal period. *See Lewallen*, 394 F. App'x at 41. In the Employees' second motion for judgment as a matter of law, the Employees included a "Procedural Note" that explained the reason for the second, identical filing; the Employees weren't sure if their original renewed motion for judgment as a matter of law complied with Rules 50(b) and 59 since the motion was filed *before* the district court's Final Judgment order. Seemingly out of an abundance of caution, the Employees filed a word-for-word identical renewed motion for judgment as a matter of law after the district court issued its Final Judgment order. This superfluous motion—because it was identical to the first—did nothing to change the Employees' obligation to file a notice of appeal within 30 days of the court's Final Judgment order. So their notice was late. Very late.

[8] 138 S. Ct. 13, 17 (2017).

[9] *Id.*

[10] *Id.*

[11] *Jackson v. Stinnett*, 102 F.3d 132, 135 (5th Cir. 1996).

No. 19-40553

4JLJ did not properly raise the timeliness argument in its opening brief,[12] the argument is forfeited.[13] We have jurisdiction under 28 U.S.C. § 1291.

## III

Both parties have appealed. The Employees appeal the district court's denial of their motion for judgment as a matter of law or a new trial.[14] 4JLJ asks us to overturn the district court's award of attorney fees and its allocation of costs. We address each issue in turn, starting with the Employees' request for us to set aside the jury's verdict.

## A

First, the standard of review. We review the denial of a motion for judgment as a matter of law de novo, but "our standard of review with respect to a jury verdict is especially deferential."[15] The jury's verdict must be upheld unless there is "no legally sufficient evidentiary basis for a reasonable

---

[12] 4JLJ never mounted a jurisdictional argument in its opening brief. It merely hinted at a lack of clarity in our jurisdiction: "To the extent (which is unclear) [the Employees'] second, substantially repetitive motion for judgment or new trial tolled its deadline to appeal the Final Judgment, this court has jurisdiction over the principal appeal pursuant to 28 U.S.C. § 1291." Brief for 4JLJ at 2–3, *Edwards v. 4JLJ*, No. 19-40553 (5th Cir. argued March 3, 2020). This isn't an argument on timeliness. It's a concession of ignorance.

[13] *See DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 489 n.1 (5th Cir. 2018) (noting that failure to adequately brief an argument forfeits the claim on appeal); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").

[14] In both of the Employees' motions for judgment as a matter of law, they requested the alternative relief of a new trial. But we refer throughout, for the sake of simplicity, to the motions only as motions for judgment as a matter of law.

[15] *SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (quoting *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)).

jury to find for a party."[16] When entertaining a motion for judgment as a matter of law, the court "must review all of the evidence in the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence."[17] For the court to grant a motion for judgment as a matter of law, the "facts and inferences" must "point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable jurors could not arrive at a contrary verdict."[18]

Our standard of review for a motion for a new trial under Rule 59 is even more restrictive.[19] We review a denied motion for a new trial for abuse of discretion.[20] An abuse of discretion occurs when the district court's ruling is based on "an erroneous view of the law or on a clearly erroneous assessment of the evidence."[21]

---

[16] *Pineda v. United Parcel Serv., Inc.* 360 F.3d 483, 486 (5th Cir. 2004) (quoting FED. R. CIV. P. 50(a)); *id.* ("[I]f reasonable persons could differ in their interpretations of the evidence, then the motion should be denied." (quotation marks and citation omitted)).

[17] *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 337 (5th Cir. 2001).

[18] *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir. 1997).

[19] *Williams v. Manitowoc Cranes, LLC*, 898 F.3d 607, 614 n.13 (5th Cir. 2018) ("It is more difficult to satisfy the standard for reversing the denial of a motion for a new trial than the standard for reversing the denial of judgment as a matter of law."); *Whitehead v. Food Max of Miss., Inc.,* 163 F.3d 265, 269 n.2 (5th Cir. 1998) ("As we have noted, the standard of review for appeals from denials of a new trial is far more narrow than that for denials of judgment as a matter of law. At first blush, this appears inconsistent, given that the remedy of a new trial is far less drastic for the nonmovant than suffering judgment as a matter of law. However, the reason for the more narrow standard for review of the denial of new trial motions springs from the lower standard applied by the district court to new trial motions—it is far less demanding than that for judgment as a matter of law.").

[20] *Munn v. Algee*, 924 F.2d 568, 575 (5th Cir. 1991).

[21] *Tollett*, 285 F.3d at 363.

No. 19-40553

B

A jury was tasked with deciding who had the more convincing argument, 4JLJ or the Employees. Now the Employees want to take that job away from the jury and give it to us. We approach this request with caution.

The jury is "as central to the American conception of the consent of the governed as an elected legislature or the independent judiciary."[22] We inherited a reverence for juries from the English; Blackstone called the jury trial "'the grand bulwark' of English Liberties."[23] But in the years leading up to the American Revolution, "Americans grew to rely on the jury as a bulwark against British oppression, rejecting attempts to force American juries to find other Americans guilty of illegal British regulations."[24] Juries were so effective at curtailing British abuses that the British attempted to get rid of juries for disputes between the colonists and the British colonial government.[25] Indeed, King George III's efforts to strip colonists of their

---

[22] Jennifer Walker Elrod, *Is the Jury Still Out?: A Case for the Continued Viability of the American Jury*, 44 TEX. TECH L. REV. 303, 303–04 (2012).

[23] *Id.* at 314 (citing 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 342 (Univ. of Chi. Press 1979) (1769)). Blackstone also said that trial by jury is "the glory of the English law" and "the most transcendent privilege which any subject can enjoy or wish for, that he cannot be affected, either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbors and equals." Jennifer Walker Elrod, *W(h)ither The Jury? The Diminishing Role of the Jury Trial in Our Legal System*, 68 WASH. & LEE L. REV. 3, 7 (2011) (citing *Mitchell v. Harmony*, 54 U.S. 115, 142–43 (1851) (quoting 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 227–29 (Oxford, Clarendon Pr. 1992) (1765))).

[24] Elrod, *Is the Jury Still Out?, supra* note 22, at 315.

[25] *Id.*

right to trial by jury was one of our chief grievances against the King and a catalyst for declaring our independence.[26]

Given how important juries were in resisting the abuses of the British colonial government, it's no surprise that John Adams called trial by jury, along with representative democracy, "the heart and lungs of liberty."[27] Thomas Jefferson believed juries to be "the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution."[28] In the ratification debates, the value of juries was the only thing Federalists and Anti-Federalists could agree on. According to Alexander Hamilton, "if there is any difference between them it consists in this, that the former regard it as a valuable safeguard to liberty; the later represent it as the very palladium of free government."[29] Juries are rightly reverenced in the American justice system because, as Chief Justice Taft said, juries give the people security that they, "being part of the judicial system of the country, can prevent its arbitrary use or abuse."[30] Those concerns are no less real now than they were in 1776.

---

[26] *Id.* One of the grievances against King George III listed in the Declaration of Independence was his habit of "depriving us, in many Cases, of the Benefits of Trial by Jury." *Id.* (quoting The DECLARATION OF INDEPENDENCE para. 20 (U.S. 1776)).

[27] *Id.* at 308, 331 (quoting Thomas J. Methvin, *Alabama-The Arbitration State*, 62 ALA. LAW. 48, 49 (2001) ("In 1774, John Adams stated: 'Representative government and trial by jury are the heart and lungs of liberty. Without them, we have no other fortification against being ridden like horses, fleeced like sheep, worked like cattle, and fed and clothed like swines and hounds.")).

[28] *Id.* at 308 (quoting Donald M. Middlebrooks, *Reviving Thomas Jefferson's Jury: Sparf and Hansen v. United States Reconsidered*, 46 AM. J. LEGAL HIST. 353, 353 (2004)).

[29] Elrod, *W(h)ither the Jury?*, *supra* note 23, at 8 n.28 (citing THE FEDERALIST NO. 83, at 521 (Alexander Hamilton) (G.P. Putnam's Sons ed., 1888)).

[30] Elrod, *Is the Jury Still Out?*, *supra* note 22, at 309 (citing *Balzac v. People of Porto Rico*, 258 U.S. 298, 310 (1922)).

So we do not "tamper lightly" with jury verdicts.[31] The law "commands judges, who are of all officials the least accountable to the people, not to invade the province of judgment by the people."[32] But, when necessary to protect the integrity of the courts and the rights of the people, federal courts can set aside jury verdicts when they have no evidentiary basis.[33] That is the lens through which we must approach the Employees' request for judgment as a matter of law.

The Employees challenge two findings on appeal—two questions that have already been answered by a jury. The first is whether, under the FLSA, 4JLJ ought to have included the Employees' bonuses in the calculation of overtime pay. The second is whether Jalufka was an "employer" under the FLSA and thus liable alongside 4JLJ for any unpaid wages.

1

We begin with the core issue on appeal—the nature of 4JLJ's bonuses and whether they should have been factored into the overtime wage calculation.[34] The FLSA was passed in 1938 in order to remedy labor

---

[31] *EEOC v. Boh Brothers Const. Co., LLC*, 731 F.3d 444, 452 (2013) (quoting *Stacy v. Allied Stores Corp.*, 768 F.2d 402, 406 (D.C. Cir. 1985)).

[32] *Id.*

[33] *See Thompson v. Connick*, 578 F.3d 293 (5th Cir. 2009) (Clement, J., concurring), *rev'd on other grounds*, 563 U.S. 51 (2011) ("But as Judge Wisdom counseled when overturning a jury verdict, '[i]n reviewing [a] . . . case when the plaintiff has been injured grievously, hard as our sympathies may pull us, our duty to maintain the integrity of substantive law pulls harder.'" (quoting *Turner v. Atl. Coast Line R.R. Co.,* 292 F.2d 586, 589 (5th Cir. 1961)).

[34] The Employees first argue that 4JLJ forfeited its affirmative defense regarding bonus payments. The Employees contend that 4JLJ bears the burden of establishing that bonuses fall within an exemption, and that 4JLJ "failed to plead a statutory exclusion from the regular rate for discretionary bonuses pursuant to Section 7(e)(3)." Brief for the Employees, *Edwards v. 4JLJ*, No. 19-40553 (5th Cir. argued March 3, 2020). So, the

No. 19-40553

conditions that were "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."[35] The statute requires employers to pay non-exempt employees who work more than 40 hours a week overtime of one and one-half times the employees' "regular rate" of pay.[36] The text "broadly defines 'regular rate' as the hourly rate actually paid the employee for 'all remuneration for employment.' "[37] And the regular rate "must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments."[38] So once the parties have decided on the amount and mode of payment, the regular rate becomes a simple mathematical formula.[39]

But it's not always so simple to determine what kinds of payments should be included in the formula. Most remuneration must be included, but not all. Under § 207(e)(3), renumeration is *not* included in the regular rate *if*:

> both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly.

---

Employees argue, 4JLJ has forfeited this defense. But this argument is unavailing. Whether a bonus is discretionary—the central question on appeal—is not an *exemption*. Rather, as discussed *infra*, under § 207(e)(3), it's a definitional element of the "regular rate of pay."

[35] 29 U.S.C. § 202.

[36] *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010); § 207(a)(1).

[37] *Gagnon*, 607 F.3d at 1041 (quoting § 207(e)).

[38] *Id.* (quoting *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948)).

[39] *Id.*

No. 19-40553

29 C.F.R. § 778.211 provides the following helpful hypothetical for considering whether this standard has been met: Suppose an employer promises his sales associates that he will give them a monthly bonus of one cent for each item they sell. But the bonus will only be given when the employer decides, in his discretion, that the financial condition of the company warrants such bonuses. According to § 778.211, the employer "has abandoned discretion with regard to the *amount* of the bonus though not with regard to the *fact* of each payment."[40] The upshot: For a bonus to be excepted from the regular rate under § 207(e), the employer must maintain discretion over whether to give the bonus *and* the amount given.

4JLJ did not include its bonuses in the regular rate. But the jury found that 4JLJ retained enough discretion over whether to pay bonuses and the amount to satisfy § 207(e)(3). The Employees say this was wrong as a matter of law. We review de novo, considering whether there was a "legally sufficient evidentiary basis for a reasonable jury to find" for 4JLJ.[41]

But first, an important detour. In an FLSA dispute, plaintiffs bear the burden to prove all elements of their claims.[42] If the employer, however, wants to show that an employee is exempt from an FLSA requirement, the employer has the burden of proof on that exemption.[43] But we have never answered a question that proves decisive in this case: Who has the burden of proof on whether bonuses are discretionary and therefore excluded from the

---

[40] 29 C.F.R. § 778.211 (emphasis added).

[41] *Pineda*, 360 F.3d at 486 (quoting FED. R. CIV. P. 50(a)); *id.* ("[I]f reasonable persons could differ in their interpretations of the evidence, then the motion should be denied." (quotation marks omitted)).

[42] *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001).

[43] *Id.*

regular rate under § 207(e)(3)? The answer turns on whether § 207(e)(3) is an exemption from the overtime provisions in § 207(a).

Though we have never addressed this question head-on, we look to our other FLSA cases for guidance. In *Samson v. Apollo*, we faced the question of who has the burden of proving compliance with the requirements of the Fluctuating Workweek (FWW) method of calculating employee salary and overtime wages.[44] We held that the FWW method was "one method of complying with the overtime requirements" of § 207(a)(1)—rather than an exemption to § 207(a)(1).[45] Therefore, the employee bears the burden.

In *Carley v. Crest Pumping Technologies*, we analyzed burdens surrounding the Motor Carrier Act (MCA) exemption.[46] The MCA exempts employees who are subject to Secretary of Transportation standards from FLSA overtime requirements.[47] In *Carley*, no one disputed that the employer bore the burden to prove the MCA exemption applied. But the parties quarreled over who bore the burden of proving the weight of vehicles under the SAFETEA-LU Technical Corrections Act, which designates a class of employees to which the MCA exemption does not apply.[48] The plaintiffs argued that the employer should bear the burden because the Corrections Act uses exclusionary language, analogous to the language used

---

[44] *Id.* at 631.

[45] *Id.* at 636.

[46] 890 F.3d 575, 576 (5th Cir. 2018). *Carley* was issued shortly after *Encino Motorcars, LLC v. Navarro*, where the Supreme Court rejected the principle embraced by many courts—including our own—that exemptions to the FLSA should be narrowly construed. 138 S. Ct. 1134 (2018). *Carley* recognized that, after *Encino Motorcars*, we were bound to give the FLSA a "fair reading," rather than employ strict construction against employers' claimed exemptions, as had long been our practice. *See* 890 F.3d at 579.

[47] *Id.*

[48] *Id.*

in the exemptions listed in § 213.[49] But we found it important that the Corrections Act was "not codified as an exemption" along with those listed under § 213.[50] Rather, the Corrections Act was codified under § 207—a section that sets out FLSA standards that place the burden of proving lack of compliance on the employee.[51]

Unlike the enumerated exemptions listed in § 213, § 207 "defin[es] *when* FLSA mandates overtime pay."[52] Considering this placement in § 207, the Correction Act's "statutory structure indicates that [it] is not meant to be read in the same way as exclusionary language within a FLSA

---

[49] *Id.* at 580.

[50] *Id.*

[51] *Id.*

[52] *Id.* (emphasis added). *But see Vela v. City of Houston*, 276 F.3d 659, 664 (5th Cir. 2001); *Foremost Dairies, Inc. v. Wirtz*, 381 F.2d 653 (5th Cir. 1967). In *Vela*, we addressed the question of who bears the burden of proof on the "§ 207(k) exemption," which exempts employees of a public agency engaged in "fire protection activities" from the general overtime rule of § 207(a)(1). 276 F.3d at 664. Likewise, in *Foremost Dairies*, we held that § 7(e) of the FLSA (now § 207(f)), is an exemption on which the employer has the burden of proof. 381 F.2d at 656 n.4. Section 7(e), known as the "Belo provision," provides an exception to § 207(a)(1)'s 40-hour maximum workweek requirement, where the employee is engaged in "irregular hours of work." *Id.* at 655.

*Vela* and *Foremost Dairies* show that placement in § 207 isn't definitive proof that the provision in question isn't an exemption. But both cases helpfully show what such an exemption might look like outside the enumerated list in § 213. In *Vela*, the city sought to show that—under to § 207(k)—unless plaintiffs worked over 53 hours a week, they were exempt from the general overtime compensation requirements of § 207(a)(1). The city's argument was that § 207(a)(1) simply did not apply to that class of employee—those engaged in fire protection activities. Likewise, in *Foremost Dairies*, the employer sought to show that its employees were exempt from the FLSA's 40-hour-workweek requirement because, under § 7(e), the employees were engaged in irregular hours of work.

In contrast, 4JLJ hasn't argued that its employees are exempt from the requirements of § 207(a). Rather, 4JLJ contends that it has complied with § 207(a)(1)'s overtime requirements under § 207(e)(3)'s definition of "regular rate."

exemption."[53] The Corrections Act is not an exemption from § 207(a); instead, "it codifies conditions under which § 207(a) requires overtime pay notwithstanding the MCA exemption." In keeping with the logic of *Samson*, we found that the burden of proof should be on plaintiffs because "compliance with the Corrections Act is of a piece with compliance with § 207(a), rather than a way to exempt oneself from § 207(a)."[54]

So our key question: Is § 207(e)(3) "of a piece with compliance with § 207(a),"[55] or is it more like the exemptions listed in § 213—a mechanism for exempting oneself from compliance with § 207(a)?

Section 207(e) does not exempt employers from compliance with § 207(a); it provides instruction for compliance with § 207(a)(1), where "regular rate" is used without definition. Section 207(e) provides that definition, which is crucial for employers if they are to understand what must be included in the regular rate—in order to comply with § 207(a). It was the Employees' burden to show that they "performed work for which [they were] not properly compensated."[56] And to do so, they must show that 4JLJ ought to have included the renumeration in question in the regular rate. Because § 207(e)(3) is merely a definitional element of the regular rate—and therefore merely a definitional element of the Employees' claim—it was their burden to show that bonuses were not discretionary according to the statute's terms.[57]

---

[53] *Carley*, 890 F.3d at 580.

[54] *Id.*

[55] *See id.*

[56] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *overruled on other grounds by Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 31 (2014).

[57] *But see Newman v. Advanced Tech*, 749 F.3d 33, 36 (1st Cir. 2014) (noting that the provisions at § 207(e)(1)-(8) "are to be interpreted narrowly against the employer, and the

Now, with § 207(e)(3) in mind, we discuss 4JLJ's stage bonuses. The Employees argue that stage bonuses were nondiscretionary as a matter of law because: (1) 4JLJ did not retain discretion as to whether the bonuses would be paid; (2) the amount of the stage bonus was determined prior to the work being performed; (3) 4JLJ did not retain discretion as to the payment until near the end of the pay period; and (4) the bonus was paid according to a prior agreement.

But the Employees struggle to locate support for any of these assertions in the record. And reviewing a motion for judgment as a matter of law, we can only overturn the district court's denial based on evidence that was actually before the jury.[58] The Employees do point to testimony that some employees sometimes received stage bonuses—first $75 per stage and later $100. But the Employees show us no evidence in the record that elucidates how employees came to expect stage bonuses, who determined the amount, when the amount was determined, whether all employees typically received such bonuses, or whether the amount ever varied.

It was the Employees' burden to show that bonuses were non-discretionary. And given the paucity of evidence before the jury, there is nothing that "point[s] so strongly and overwhelmingly in favor" of a finding that stage bonuses were nondiscretionary that "reasonable jurors could not

---

employer bears the burden of showing that an exception applies" (quoting *O'Brian v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003))); *Madison v. Resources for Human Dev., Inc.*, 233 F.3d 175, 187 (3d Cir. 2000) ("The burden is on the employer to establish that the remuneration in question falls under an exemption.").

[58] *Ellis*, 258 F.3d at 337; s*ee also Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 652-653 (5th Cir.), *cert. denied sub nom. W & T Offshore, Inc. v. Apache Deepwater, L.L.C.*, 140 S. Ct. 649 (2019) ("A party is only entitled to judgment as a matter of law on an issue where no reasonable jury would have had a legally sufficient evidentiary basis to find otherwise.").

arrive at a contrary verdict."[59] The Employees simply didn't present enough evidence at trial to conclusively show a lack of discretion in 4JLJ's allocation of stage bonuses—at least not enough evidence to warrant judgment as a matter of law. Here, we decline to disturb the jury's reasoned judgment on such a flimsy record.

Performance bonuses, however, are another story. In contrast to stage bonuses, the Employees produced a written agreement at trial that governed performance bonuses. The agreement contains: (1) a list of criteria for determining whether a performance bonus would be awarded; and (2) a pay scale that stipulates precisely how much is to be given. As a reminder, for a bonus to be excluded from the regular-rate calculation, the employer must retain discretion over the fact of payment *and* the amount.

It was reasonable for the jury to conclude that 4JLJ retained discretion over *whether* to give performance bonuses. On top of witness testimony that indicted 4JLJ exercised discretion over whether to give bonuses generally, the jury had the performance bonus agreement itself to consider, which makes clear that bonuses are "NOT TO BE EXPECTED." The agreement also states that performance bonuses are for those who "consistently perform on a higher level"; it's for those who are "top performer[s]." Section 207(e) doesn't say that the existence of an agreement alone nullifies employer discretion in regard to remuneration; the statute pinpoints an agreement that causes employees to *expect* those bonuses. Given the testimony offered by the Employees' own witnesses, along with Jalufka's testimony and the written agreement, it was perfectly reasonable for the jury to conclude that the Employees would not expect the regular payment of performance bonuses.

---

[59] *Bellows,* 118 F.3d at 273 (cleaned up).

No. 19-40553

But § 207(e) also demands that employers retain discretion over the *amount* of payment, not just whether payment is given.[60] The performance bonus agreement provides a concrete pay scale. That scale shows exactly what employees will be paid if they receive a bonus. And 4JLJ points to no evidence that contradicts this predetermined pay scale. For instance, not a single employee testified that he received a performance bonus that deviated from the contracted-for amount. Based on the performance bonus agreement, and the complete absence of any evidence contradicting the universal applicability of the agreement, a reasonable jury could not have concluded that 4JLJ maintained discretion over the amount of performance bonuses. Thus, the performance bonuses were nondiscretionary under the FLSA, and 4JLJ ought to have included them in the regular rate. The Employees were entitled to judgment as a matter of law regarding performance bonuses.[61]

2

We next consider whether Jalufka was an "employer" under the FLSA and thus liable alongside 4JLJ for the unpaid wages. The jury found that Jalufka wasn't an employer. We agree.

---

[60] 29 U.S.C. § 207(e)(3).

[61] We do not address the Employees' alternatively requested relief of a new trial. That's because "[i]t is more difficult to satisfy the standard for reversing the denial of a motion for a new trial than the standard for reversing the denial of judgment as a matter of law." *Williams*, 898 F.3d at 614 n.13. So if we would affirm a denied motion for judgment as a matter of law, we would affirm denial of the same motion for a new trial. *Miller v. Travis County*, 953 F.3d 817, 821 (5th Cir. 2020) (finding the evidence under the "more exacting standard" for judgment as a matter of law to satisfy the standard for a new trial). For this reason, we affirm the district court's denial of a motion for a new trial over the issue of stage bonuses. And because we reverse the district court's denial of judgment as a matter of law regarding performance bonuses, the requested relief of a new trial over this issue is moot.

To determine whether an individual or an entity is an employer under the FLSA, we use the "economic reality" test.[62] That test asks us to consider "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[63]

The Employees make much of the fact that Jalufka is the sole owner of 4JLJ, so he was the sole beneficiary of the "unpaid overtime premiums."[64] But they cite no case supporting this as a relevant factor. And under the standard economic reality factors, 4JLJ offered ample evidence. The record demonstrates that Jalufka did not make day-to-day hiring or firing decisions, that he did not set pay rates, and that he did not maintain employment files. There was testimony that Jalufka was not the type of owner who "controls everything" or is "involved in day-to-day operations and decisions"; rather, his managers made those decisions. Meanwhile, Jalufka was usually "out in the yard working with the rest of the guys." Testimony from several individuals—including the Employees' own witnesses—supported a finding that Jalufka was not an "employer" for the purposes of personal liability under the FLSA.

C

Finally, 4JLJ cross-appealed, arguing that the district court's award of attorney fees and its Rule 54(d) cost allocation were both an abuse of discretion. 4JLJ frames the district court's attorney-fee award and its Rule

---

[62] *Gray v. Powers*, 673 F.3d 352, 354. (5th Cir. 2012).

[63] *Id.* at 355 (quotation marks omitted).

[64] Brief for the Employees at 33, *Edwards v. 4JLJ*, No. 19-40553 (5th Cir. argued March 3, 2020).

54(d) cost allocation as "second and third tier sanctions."[65] This is because, before trial, the district court shifted the burden of proof—from the Employees to 4JLJ —on an element of the Employees' claim. Both parties agree that this burden shifting sanction is not at issue. But the first sanction plays a role in 4JLJ's theory on appeal because, 4JLJ argues, the burden shifting sanction was the first of multiple tiers of sanctions. The second tier was the attorney fee award to the Employees. And the third tier was the reduction in Rule 54 costs that the district court awarded to 4JLJ as the prevailing party.[66] These sanctions, 4JLJ argues, were duplicative.

1

We start with attorney fees. District courts "wield their various sanction powers at their broad discretion."[67] We review a district court's decision to impose sanctions for abuse of discretion.[68] A district court abuses its discretion when its ruling "is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[69]

Here, the district court didn't abuse its discretion in fashioning sanctions for 4JLJ's delays. The court invoked Rules 26 and 37 in its sanction order. 4JLJ contends that neither rule authorized the district court's sanctions. Although we doubt whether the court's sanction order would be

---

[65] Brief for 4JLJ at 54, *Edwards v. 4JLJ*, No. 19-40553 (5th Cir. argued March 3, 2020).

[66] The court awarded 4JLJ only $14,920.98 of the requested $44,533.04.

[67] *Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 203 (5th Cir. 2016) (quoting *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993)).

[68] *U.S. v. 49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003) (citing *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998)).

[69] *Tollett*, 285 F.3d at 363.

warranted under Rule 37 alone (given that no spoliation occurred),[70] it was still within the district court's inherent and Rule 26 powers to sanction 4JLJ for evasive discovery practices.[71] And the district court did not base its sanctions ruling on a clearly erroneous assessment of the evidence. There is support in the record for the district court's conclusion that 4JLJ's delays were willful and imposed unnecessary costs on the Employees. 4JLJ intimated that it could not access the Fleetmatics data when it could, in one instance responding to a discovery request by stating "we wouldn't have anything anyway." Given our strong reluctance "to substitute our judgment for that of the trial court, when it comes to enforcement of acceptable standards of litigation conduct,"[72] we decline to upset the district court's decision to sanction this sort of behavior.

4JLJ also argues that the sanctions were punitive rather than compensatory and therefore unwarranted under *Goodyear Tire & Rubber Co. v. Haeger*.[73] We disagree. A sanction is compensatory if it is "calibrated to the damages caused by the bad-faith acts on which it is based."[74] And "a fee is so calibrated if it covers the legal bills that the litigation abuse occasioned."[75] The district court's sanctions fit the bill. The expenses and attorney fees were calibrated to the damages caused by 4JLJ's failure to timely produce the Fleetmatics data. The sanctions remedied, among other things, the Employees' "numerous expenses, delay costs, and the burden of attorney

---

[70] *See* FED. R. CIV. P. 37(e).

[71] *See* FED. R. CIV. P. 26(g); *Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178, 1186 (2017).

[72] *Topalian*, 3 F.3d at 935 (internal citation omitted).

[73] *See* 137 S. Ct. at 1186.

[74] *Id.* (internal quotation marks, bracketing, and citation omitted).

[75] *Id.*

time and attention to motions, [and] status conferences," all of which resulted from 4JLJ's delays. The district court's measurement may not have been perfect, but it need not be. The "essential goal in shifting fees is to do rough justice, not to achieve auditing perfection."[76] Here, we decline to second-guess the district court's sense of rough justice; the attorney fees award was not an abuse of discretion.

2

We next address what 4JLJ labels the third-tier sanction—the district court's Rule 54 cost allocation. Despite a "strong presumption that the prevailing party will be awarded costs," we will only reverse a district court's decision regarding costs for an abuse of discretion.[77] Our review is narrow because district courts have wide discretion under Rule 54 to decide whether, and to what extent, to reduce these costs.[78] It may reduce or deny costs for many reasons,[79] although it must articulate its reasons for doing so.[80]

Here, the district court articulated its reasons in its order on the bill of costs. In the district court's view, reducing costs was necessary "to ensure that its sanctions [were] effective and not unduly offset by [4JLJ's] costs." And the court based its decision on facts in the record suggesting that 4JLJ had engaged in evasive discovery practices.

4JLJ argues that—like the attorney-fees sanction—the court's decision to reduce Rule 54 costs was punitive because it was layered atop

---

[76] *Haeger*, 137 S. Ct. at 1187 (internal quotation marks and citation omitted).

[77] *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006).

[78] *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1049 (5th Cir. 1998).

[79] See *Pacheco*, 448 F.3d at 794 (listing "misconduct by the prevailing party" as a reason for withholding costs from the prevailing party).

[80] *Id.*

prior sanctions. We reject this argument. By denying 4JLJ some of the costs it would have otherwise been entitled to, the district court sought to ensure that the costs would not offset the attorney fees and expenses the court awarded to the Employees. In light of its "superior understanding of the litigation,"[81] we find no basis to question the district court's decision to reduce these costs.

In sum, 4JLJ's arguments on cross-appeal are unavailing. The district court did not abuse its discretion in awarding attorney fees to the Employees or in awarding Rule 54 costs.

## CONCLUSION

We are reluctant to second-guess the decision of a jury, but we will when the law requires it. Judgment as a matter of law in favor of the Employees was warranted regarding performance bonuses but not stage bonuses. So we REVERSE the district court's denial of judgment as a matter of law and REMAND for the court to consider what relief is owed to the Employees consistent with this opinion. Also, we AFFIRM the district court as to Jalufka's status as an employer under the FLSA. Finally, we AFFIRM the court's award of attorney fees and its bill of costs allocation.

---

[81] *Haeger*, 137 S. Ct. at 1187.