(Slip Opinion) OCTOBER TERM, 2016 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## GOODYEAR TIRE & RUBBER CO. *v.* HAEGER ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 15–1406. Argued January 10, 2017—Decided April 18, 2017

Respondents Leroy, Donna, Barry, and Suzanne Haeger sued petitioner Goodyear Tire & Rubber Company, alleging that the failure of a Goodyear G159 tire caused the family's motorhome to swerve off the road and flip over. After several years of contentious discovery, marked by Goodyear's slow response to repeated requests for internal G159 test results, the parties settled the case. Some months later, the Haegers' lawyer learned that, in another lawsuit involving the G159, Goodyear had disclosed test results indicating that the tire got unusually hot at highway speeds. In subsequent correspondence, Goodyear conceded withholding the information from the Haegers, even though they had requested all testing data. The Haegers then sought sanctions for discovery fraud, urging that Goodyear's misconduct entitled them to attorney's fees and costs expended in the litigation.

The District Court found that Goodyear had engaged in an extended course of misconduct. Exercising its inherent power to sanction bad-faith behavior, the court awarded the Haegers $2.7 million—the entire sum they had spent in legal fees and costs since the moment, early in the litigation, when Goodyear made its first dishonest discovery response. The court said that in the usual case, sanctions ordered pursuant to a court's inherent power to sanction litigation misconduct must be limited to the amount of legal fees caused by that misconduct. But it determined that in cases of particularly egregious behavior, a court can award a party all of the attorney's fees incurred in a case, without any need to find a "causal link between [the expenses and] the sanctionable conduct." 906 F. Supp. 2d 938, 975. As further support for its award, the District Court concluded that full and timely disclosure of the test results would likely have led Good-

year to settle the case much earlier. Acknowledging that the Ninth Circuit might require a link between the misconduct and the harm caused, however, the court also made a contingent award of $2 million. That smaller amount, designed to take effect if the Ninth Circuit reversed the larger award, deducted $700,000 in fees the Haegers incurred in developing claims against other defendants and proving their own medical damages. The Ninth Circuit affirmed the full $2.7 million award, concluding that the District Court had properly awarded the Haegers all the fees they incurred during the time when Goodyear was acting in bad faith.

*Held*: When a federal court exercises its inherent authority to sanction bad-faith conduct by ordering a litigant to pay the other side's legal fees, the award is limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith. Pp. 5–13.

   (a) Federal courts possess certain inherent powers, including "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers* v. *NASCO, Inc.*, 501 U. S. 32, 44–45. One permissible sanction is an assessment of attorney's fees against a party that acts in bad faith. Such a sanction must be compensatory, rather than punitive, when imposed pursuant to civil procedures. See *Mine Workers* v. *Bagwell*, 512 U. S. 821, 826–830. A sanction counts as compensatory only if it is "calibrate[d] to [the] damages caused by" the bad-faith acts on which it is based. *Id.*, at 834. Hence the need for a court to establish a causal link between the litigant's misbehavior and legal fees paid by the opposing party. That kind of causal connection is appropriately framed as a but-for test, meaning a court may award only those fees that the innocent party would not have incurred in the absence of litigation misconduct. That standard generally demands that a district court assess and allocate specific litigation expenses—yet still allows it to exercise discretion and judgment. *Fox* v. *Vice*, 563 U. S. 826, 836. And in exceptional cases, that standard allows a court to avoid segregating individual expense items by shifting all of a party's fees, from either the start or some midpoint of a suit. Pp. 5–9.

   (b) Here, the parties largely agree about the pertinent law but dispute what it means for this case. Goodyear contends that it requires throwing out the fee award and instructing the trial court to consider the matter anew. The Haegers maintain, to the contrary, that the award can stand because both courts below articulated and applied the appropriate but-for causation standard, or, even if they did not, the fee award in fact passes a but-for test.

   The Haegers' defense of the lower courts' reasoning is a nonstarter: Neither court used the correct legal standard. The District

Court specifically disclaimed the need for a causal link on the ground that this was a "truly egregious" case. 906 F. Supp. 2d, at 975. And the Ninth Circuit found that the trial court could grant all attorney's fees incurred "during the time when [Goodyear was] acting in bad faith," 813 F. 3d 1233, 1249—a temporal, not causal, limitation. A sanctioning court must determine which fees were incurred because of, and solely because of, the misconduct at issue, and no such finding lies behind the $2.7 million award made and affirmed below. Nor is this Court inclined to fill in the gap, as the Haegers urge. As an initial matter, the Haegers have not shown that this litigation would have settled as soon as Goodyear divulged the heat-test results (a showing that would justify an all-fees award from the moment Goodyear was supposed to disclose). Further, they cannot demonstrate that Goodyear's non-disclosure so permeated the suit as to make that misconduct a but-for cause of every subsequent legal expense, totaling the full $2.7 million.

Although the District Court considered causation in arriving at its back-up award of $2 million, it is unclear whether its understanding of that requirement corresponds to the appropriate standard—an uncertainty pointing toward throwing out the fee award and instructing the trial court to consider the matter anew. However, the Haegers contend that Goodyear has waived any ability to challenge the contingent award since the $2 million sum reflects Goodyear's own submission that only about $700,000 of the fees sought would have been incurred regardless of the company's behavior. The Court of Appeals did not address that issue, and this Court declines to decide it in the first instance. The possibility of waiver should therefore be the initial order of business on remand. Pp. 9–13.

813 F. 3d 1233, reversed and remanded.

KAGAN, J., delivered the opinion of the Court, in which all other Members joined, except GORSUCH, J., who took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

＿＿＿＿＿

No. 15–1406

＿＿＿＿＿

## GOODYEAR TIRE & RUBBER COMPANY, PETITIONER *v.* LEROY HAEGER, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[April 18, 2017]

JUSTICE KAGAN delivered the opinion of the Court.

In this case, we consider a federal court's inherent authority to sanction a litigant for bad-faith conduct by ordering it to pay the other side's legal fees. We hold that such an order is limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith. A district court has broad discretion to calculate fee awards under that standard. But because the court here granted legal fees beyond those resulting from the litigation misconduct, its award cannot stand.

I

Respondents Leroy, Donna, Barry, and Suzanne Haeger sued the Goodyear Tire & Rubber Company (among other defendants) after the family's motorhome swerved off the road and flipped over.[1] The Haegers alleged that the

－－－－－－－－－－

[1] The additional defendants named in the Haegers' complaint were Gulf Stream Coach, the manufacturer of the motorhome, and Spartan Motors, the manufacturer of the vehicle's chassis. In the course of the litigation, the Haegers reached a settlement with Gulf Stream, and the District Court granted Spartan's motion for summary judgment.

failure of a Goodyear G159 tire on the vehicle caused the accident: Their theory was that the tire was not designed to withstand the level of heat it generated when used on a motorhome at highway speeds. Discovery in the case lasted several years—and itself generated considerable heat. The Haegers repeatedly asked Goodyear to turn over internal test results for the G159, but the company's responses were both slow in coming and unrevealing in content. After making the District Court referee some of their more contentious discovery battles, the parties finally settled the case (for a still-undisclosed sum) on the eve of trial.

Some months later, the Haegers' lawyer learned from a newspaper article that, in another lawsuit involving the G159, Goodyear had disclosed a set of test results he had never seen. That data indicated that the G159 got unusually hot at speeds of between 55 and 65 miles per hour. In ensuing correspondence, Goodyear conceded withholding the information from the Haegers even though they had requested (both early and often) "all testing data" related to the G159. Record in No. 2:05–cv–2046 (D Ariz.), Doc. 938, p. 8; see *id.*, Doc. 938–1, at 24, 36; *id.*, Doc. 1044–2, at 25 (filed under seal). The Haegers accordingly sought sanctions for discovery fraud, claiming that "Goodyear knowingly concealed crucial 'internal heat test' records related to the [G159's] defective design." *Id.*, Doc. 938, at 1. That conduct, the Haegers urged, entitled them to attorney's fees and costs expended in the litigation. See *id.,* at 14.

The District Court agreed to make such an award in the exercise of its inherent power to sanction litigation misconduct.[2] The court's assessment of Goodyear's actions

---

[2] The court reasoned that no statute or rule enabled it to reach all the offending behavior. Sanctions under Federal Rule of Civil Procedure 11, the court thought, should not be imposed after final judgment in a

was harsh (and is not contested here).  Goodyear, the court found, had engaged in a "years-long course" of bad-faith behavior.  906 F. Supp. 2d 938, 972 (D Ariz. 2012).  By withholding the G159's test results at every turn, the company and its lawyers had made "repeated and deliberate attempts to frustrate the resolution of this case on the merits."  *Id.,* at 971.  But because the case had already settled, the court had limited options.  It could not take the measure it most wished: an "entry of default judgment" against Goodyear.  *Id.,* at 972.  All it could do for the Haegers was to order Goodyear to reimburse them for attorney's fees and costs paid during the suit.

But that award, in the District Court's view, could be comprehensive, covering both expenses that could be causally tied to Goodyear's misconduct and those that could not.  The court calculated that the Haegers had spent $2.7 million in legal fees and costs since the moment, early in the litigation, when Goodyear made its first dishonest discovery response.  And the court awarded the Haegers that entire sum.  In the "usual[ ]" case, the court reasoned, "sanctions under a [c]ourt's inherent power must be limited to the amount [of legal fees] caused by the misconduct."  *Id.,* at 974–975 (emphasis deleted).  But this case was not the usual one: Here, "the sanctionable conduct r[ose] to a truly egregious level."  *Id.,* at 975.  And when a litigant behaves that badly, the court opined, "all of the attorneys' fees incurred in the case [can] be awarded," without any need to find a "causal link between [those expenses and] the sanctionable conduct."  *Ibid.*  As further support for its decision, the court considered the chances that full and timely disclosure of the test results would

————————
case. See 906 F. Supp. 2d 938, 973, n. 24 (D Ariz. 2012). And sanctions under 28 U. S. C. §1927, it noted, could address the wrongdoing of only Goodyear's attorneys, rather than of Goodyear itself. See 906 F. Supp. 2d, at 973.

have affected Goodyear's settlement calculus. "While there is some uncertainty," the court stated, "the case more likely than not would have settled much earlier." *Id.,* at 972.

Perhaps sensing thin ice, the District Court also made a "contingent award" in the event that the Court of Appeals reversed its preferred one. App. to Pet. for Cert. 180a. Here, the District Court recognized the possibility that a "linkage between [Goodyear's] misconduct and [the Haegers'] harm is required." *Ibid.* If so, the court stated, its fee award should be reduced to $2 million. The deduction of $700,000, which was based on estimates Goodyear offered, represented fees that the Haegers incurred in developing claims against other defendants and proving their own medical damages. See App. 69.

A divided Ninth Circuit panel affirmed the full $2.7 million award. According to the majority, the District Court acted properly in "award[ing] the amount [it] reasonably believed" the Haegers expended in attorney's fees and costs "during the time when [Goodyear was] acting in bad faith." 813 F. 3d 1233, 1250 (2016). Or repeated in just slightly different words: The District Court "did not abuse its discretion" in "award[ing] the Haegers all their attorneys' fees and costs in prosecuting the action once [Goodyear] began flouting [its] discovery obligations." *Id.,* at 1249. Judge Watford disagreed. He would have demanded a "causal link between Goodyear's misconduct and the fees awarded." *Id.,* at 1255 (dissenting opinion). The only part of the District Court's opinion that might support such a connection, Judge Watford noted, was its hypothesis that disclosure of the test results would have produced an earlier settlement, and thus obviated the need for further legal expenses. But Judge Watford thought that theory unpersuasive: Because Goodyear would still have had plausible defenses to the Haegers' suit, "[i]t's anyone's guess how the litigation would have

proceeded" had timely disclosure occurred. *Ibid.* Accordingly, Judge Watford would have reversed the District Court for awarding fees beyond those "sustained *as a result of* Goodyear's misconduct." *Id.,* at 1256.

The Court of Appeals' decision created a split of authority: Other Circuits have insisted on limiting sanctions like this one to fees or costs that are causally related to a litigant's misconduct.[3] We therefore granted certiorari. 579 U. S. \_\_\_ (2016).

## II

Federal courts possess certain "inherent powers," not conferred by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link* v. *Wabash R. Co.*, 370 U. S. 626, 630–631 (1962). That authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers* v. *NASCO, Inc.*, 501 U. S. 32, 44–45 (1991). And one permissible sanction is an "assessment of attorney's fees"—an order, like the one issued here, instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side. *Id.,* at 45.

This Court has made clear that such a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature. See *Mine Workers* v. *Bagwell*, 512 U. S. 821, 826–830 (1994) (distinguishing compensatory from punitive sanctions and specifying the procedures needed to impose each kind).[4] In other words, the fee award may go no further than to redress the

––––––––

[3] See, *e.g., Plaintiffs' Baycol Steering Comm.* v. *Bayer Corp.*, 419 F. 3d 794, 808 (CA8 2005); *Bradley* v. *American Household, Inc.*, 378 F. 3d 373, 378 (CA4 2004); *United States* v. *Dowell*, 257 F. 3d 694, 699 (CA7 2001).

[4] *Bagwell* also addressed "coercive" sanctions, designed to make a party comply with a court order. 512 U. S., at 829. That kind of sanction is not at issue here.

wronged party "for losses sustained"; it may not impose an additional amount as punishment for the sanctioned party's misbehavior.  *Id.,* at 829 (quoting *United States* v. *Mine Workers*, 330 U. S. 258, 304 (1947)).  To level that kind of separate penalty, a court would need to provide procedural guarantees applicable in criminal cases, such as a "beyond a reasonable doubt" standard of proof.  See *id.,* at 826, 832–834, 838–839.  When (as in this case) those criminal-type protections are missing, a court's shifting of fees is limited to reimbursing the victim.

That means, pretty much by definition, that the court can shift only those attorney's fees incurred because of the misconduct at issue.  Compensation for a wrong, after all, tracks the loss resulting from that wrong.  So as we have previously noted, a sanction counts as compensatory only if it is "calibrate[d] to [the] damages caused by" the bad-faith acts on which it is based.  *Id.,* at 834.  A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned.  But if an award extends further than that—to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment.  Hence the need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party.[5]

––––––––––

[5] Rule-based and statutory sanction regimes similarly require courts to find such a causal connection before shifting fees.  For example, the Federal Rules of Civil Procedure provide that a district court may order a party to pay attorney's fees "caused by" discovery misconduct, Rule 37(b)(2)(C), or "directly resulting from" misrepresentations in pleadings, motions, and other papers, Rule 11(c)(4).  And under 28 U. S. C. §1927, a court may require an attorney who unreasonably multiplies proceedings to pay attorney's fees incurred "because of" that misconduct.  Those provisions confirm the need to establish a causal link between misconduct and fees when acting under inherent authority, given that such undelegated powers should be exercised with especial "restraint and discretion."  *Roadway Express, Inc.* v. *Piper*, 447 U. S.

That kind of causal connection, as this Court explained in another attorney's fees case, is appropriately framed as a but-for test: The complaining party (here, the Haegers) may recover "only the portion of his fees that he would not have paid but for" the misconduct. *Fox* v. *Vice*, 563 U. S. 826, 836 (2011); see *Paroline* v. *United States*, 572 U. S. \_\_\_, \_\_\_ (2014) (slip op., at 12) ("The traditional way to prove that one event was a factual cause of another is to show that the latter would not have occurred 'but for' the former"). In *Fox*, a prevailing defendant sought reimbursement under a fee-shifting statute for legal expenses incurred in defending against several frivolous claims. See 563 U. S., at 830; 42 U. S. C. §1988. The trial court granted fees for all legal work relating to those claims— regardless of whether the same work would have been done (for example, the same depositions taken) to contest the *non*-frivolous claims in the suit. We made clear that was wrong. When a "defendant would have incurred [an] expense in any event[,] he has suffered no incremental harm from the frivolous claim," and so the court lacks a basis for shifting the expense. *Fox,* 563 U. S., at 836. Substitute "discovery abuse" for "frivolous claim" in that sentence, and the same thing goes in this case. Or otherwise said (and again borrowing from *Fox*), when "the cost[] would have been incurred in the absence of" the discovery violation, then the court (possessing only the power to compensate for harm the misconduct has caused) must leave it alone. *Id.,* at 838.

This but-for causation standard generally demands that a district court assess and allocate specific litigation expenses—yet still allows it to exercise discretion and judgment. The court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the

––––––––––
752, 764 (1980).

absence of the sanctioned conduct. The award is then the sum total of the fees that, except for the misbehavior, would not have accrued. See *id.,* at 837–838 (providing illustrative examples). But as we stressed in *Fox*, trial courts undertaking that task "need not, and indeed should not, become green-eyeshade accountants" (or whatever the contemporary equivalent is). *Id.,* at 838. "The essential goal" in shifting fees is "to do rough justice, not to achieve auditing perfection." *Ibid.* Accordingly, a district court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Ibid.* The court may decide, for example, that all (or a set percentage) of a particular category of expenses—say, for expert discovery—were incurred solely because of a litigant's bad-faith conduct. And such judgments, in light of the trial court's "superior understanding of the litigation," are entitled to substantial deference on appeal. *Hensley* v. *Eckerhart*, 461 U. S. 424, 437 (1983).

In exceptional cases, the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop. *Chambers* v. *NASCO* offers one illustration. There, we approved such an award because literally everything the defendant did—"his entire course of conduct" throughout, and indeed preceding, the litigation—was "part of a sordid scheme" to defeat a valid claim. 501 U. S., at 51, 57 (brackets omitted). Thus, the district court could reasonably conclude that all legal expenses in the suit "were caused . . . solely by [his] fraudulent and brazenly unethical efforts." *Id.,* at 58. Or to flip the example: If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award. And similarly, if a court finds that a lawsuit, absent litigation misconduct, would have settled at a specific time—for example, when a party was legally required to disclose evidence fatal to its posi-

tion—then the court may grant all fees incurred from that moment on. In each of those scenarios, a court escapes the grind of segregating individual expense items (a deposition here, a motion there)—or even categories of such items (again, like expert discovery)—but only because all fees in the litigation, or a phase of it, meet the applicable test: They would not have been incurred except for the misconduct.

## III

It is an oddity of this case that both sides agree with just about everything said in the last six paragraphs about the pertinent law. Do legal fees awarded under a court's inherent sanctioning authority have to be compensatory rather than punitive when civil litigation procedures are used? The Haegers and Goodyear alike say yes. Does that mean the fees awarded must be causally related to the sanctioned party's misconduct? A joint yes on that too. More specifically, does the appropriate causal test limit the fees, a la *Fox*, to those that would not have been incurred but for the bad faith? No argument there either. And in an exceptional case, such as *Chambers*, could that test produce an award extending as far as all of the wronged party's legal fees? Once again, agreement (if with differing degrees of enthusiasm). See Brief for Petitioner 17, 23–24, 31; Brief for Respondents 17–18, 22–23; Tr. of Oral Arg. 34–35, 46–47.

All the parties really argue about here is what that law means for this case. Goodyear contends that it requires throwing out the trial court's fee award and instructing the court to consider the matter anew. The Haegers maintain, to the contrary, that the award can stand. They initially contend—pointing to a couple of passages from the Ninth Circuit's opinion—that both courts below articulated and applied the very but-for causation standard we have laid out. See Brief for Respondents 17–18 (highlight-

ing the Ninth Circuit's statements that Goodyear's "bad faith conduct caused significant harm" and that the District Court "determine[d] the appropriate amount of fees to award as sanctions to compensate the [Haegers] for the damages they suffered as a result of [Goodyear's] bad faith"). And even if we reject that view, the Haegers continue, we may uphold the fee award on the ground that it in fact passes a but-for test. That standard is satisfied (so they say) for either of two reasons. First, because the case would have settled as soon as Goodyear disclosed the requested heat-test results, thus putting an end to the Haegers' legal bills. Or second, because (settlement prospects aside) the withholding of that data so infected the lawsuit as to account for each and every expense the Haegers subsequently incurred. See *id.,* at 14–15, 22, 26.

The Haegers' defense of the lower courts' reasoning is a non-starter: Neither of them used the correct legal standard. As earlier recounted, the District Court specifically disclaimed the "usual[ ]" need to find a "causal link" between misconduct and fees when the sanctioned party's behavior was bad enough—in the court's words, when it "r[ose] to a truly egregious level." 906 F. Supp. 2d, at 975 (emphasis deleted); see *supra,* at 3. In such circumstances, the court thought, it could award "all" fees, including those that would have been incurred in the absence of the misconduct. 906 F. Supp. 2d, at 975. And the court confirmed that approach even while conceding that it might be wrong: By issuing a "contingent award" of $2 million, meant to go into effect if the Ninth Circuit demanded a causal "linkage between the misconduct and harm," the District Court made clear that its primary, $2.7 million award was not so confined. App. to Pet. for Cert. 180a; see *supra,* at 4. Still, the Court of Appeals left the larger sanction in place, because it too mistook what findings were needed to support that award. In the Ninth Circuit's view, the trial court could grant all attorney's fees in-

curred "*during the time when* [Goodyear was] acting in bad faith." 813 F. 3d, at 1250 (emphasis added); see *id.,* at 1249 (permitting an award of fees incurred "*once* [Goodyear] began flouting [its] discovery obligations" (emphasis added)); *supra,* at 4. But that is a temporal limitation, not a causal one; and, like the District Court's "egregiousness" requirement, it is wide of the mark. A sanctioning court must determine which fees were incurred because of, and solely because of, the misconduct at issue (however serious, or concurrent with a lawyer's work, it might have been). No such finding lies behind the $2.7 million award made and affirmed below.

Nor are we tempted to fill in that gap, as the Haegers have invited us to do. As an initial matter, the Haegers have not shown that this litigation would have settled as soon as Goodyear divulged the heat-test results (thus justifying an all-fees award from the moment it was supposed to disclose, see *supra,* at 8–9). Even the District Court did not go quite that far: In attempting to buttress its comprehensive award, it said only (and after expressing "some uncertainty") that the suit probably would have settled "much earlier." 906 F. Supp. 2d, at 972. And that more limited finding is itself subject to grave doubt, even taking into account the deference owed to the trial court. As Judge Watford reasoned, the test results, although favorable to the Haegers' version of events, did not deprive Goodyear of colorable defenses. In particular, Goodyear still could have argued, as it had from the beginning, that "the Haegers' own tire, which had endured more than 40,000 miles of wear and tear, failed because it struck road debris." 813 F. 3d, at 1256 (dissenting opinion). And indeed, that is pretty much the course Goodyear took in another suit alleging that the G159 caused a motorhome accident. See *Schalmo* v. *Goodyear*, No. 51–2006–CA–2064–WS (Fla. Cir. Ct., 6th Cir., Pasco County). In that case (as Judge Watford again observed), Goodyear pro-

duced the very test results at issue here, yet still elected to go to trial. See 813 F. 3d, at 1256. So we do not think the record allows a finding, as would support the $2.7 million award, that disclosure of the heat-test results would have led straightaway to a settlement.

Further, the Haegers cannot demonstrate that Goodyear's non-disclosure so permeated the suit as to make that misconduct a but-for cause of every subsequent legal expense, totaling the full $2.7 million. If nothing else, the District Court's back-up fee award belies that theory. After introducing a causal element into the equation, the court found that the $700,000 of fees that the Haegers incurred in litigating against other defendants and proving their own medical damages had nothing to do with Goodyear's discovery decisions. See App. to Pet. for Cert. 180a; *supra,* at 4. The Haegers have failed to offer any concrete reason for questioning that judgment, and we do not see how they could. At a minimum, then, the sanction order could not force Goodyear to reimburse those expenses—because, again, the Haegers would have paid them even had the company behaved immaculately in every respect.

That leaves the question whether the contingent $2 million award should now stand—or, alternatively, whether the District Court must reconsider from scratch which fees to shift. In the absence of any waiver issue, we would insist on the latter course. Although the District Court considered causation in arriving at its back-up award, we cannot tell from its sparse discussion whether its understanding of that requirement corresponds to the standard we have described. That uncertainty points toward demanding a do-over, under the unequivocally right legal rules. But the Haegers contend that Goodyear has waived any ability to challenge the $2 million award. In their view, that sum reflected Goodyear's own submission—which it may not now amend—that only about

$700,000 of the fees sought would have been incurred "regardless of Goodyear's behavior." App. 69; see Brief for Respondents 41; *supra,* at 4. The Court of Appeals did not previously address that issue, and we decline to decide it in the first instance. See *Cutter* v. *Wilkinson,* 544 U. S. 709, 718, n. 7 (2005) ("[W]e are a court of review, not of first view"). The possibility of waiver should therefore be the initial order of business below. If a waiver is found, that is the end of this case. If not, the District Court must reassess fees in line with a but-for causation requirement.

For these reasons, we reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*


JUSTICE GORSUCH took no part in the consideration or decision of this case.