Vitaform, Inc. v. Aeroflow, Inc., 2021 NCBC 79.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

VITAFORM, INC. d/b/a BODY
AFTER BABY,

    Plaintiff,

v.

AEROFLOW, INC. and MOTIF
MEDICAL, LLC,

    Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 3707

**ORDER AND OPINION ON
DEFENDANTS' MOTION FOR
SANCTIONS**

1. **THIS MATTER** is before the Court upon Defendants Aeroflow, Inc. ("Aeroflow") and Motif Medical, LLC's ("Motif Medical"; together "Defendants") Motion for Sanctions (the "Motion"), (ECF No. 103), in the above-captioned case.

2. After considering the Motion, the parties' materials offered in support of and in opposition to the Motion, and other relevant matters of record, the Court hereby **GRANTS** the Motion in part, **DENIES** the Motion in part, **ENTERS** the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**, and **ORDERS** relief as set forth below.

> *Smith DeVoss, PLLC, by Jeffrey J. Smith and John R. DeVoss, and Wimer & Snider, P.C., by Jake A. Snider, for Plaintiff Vitaform, Inc. (d/b/a Body After Baby).*

> *Ward and Smith, P.A., by Joseph A. Schouten, Haley R. Wells, and Jordan M. Spanner, for Defendants Aeroflow, Inc. and Motif Medical, LLC.*

Bledsoe, Chief Judge.

# I.

# FINDINGS OF FACT

A.  Procedural Background

3.  On 10 September 2021, Defendants submitted a Business Court Rule ("BCR") 10.9 dispute summary concerning Plaintiff Vitaform, Inc. (d/b/a Body After Baby)'s ("Plaintiff") disclosure of experts on 6 September 2021 (the "BCR 10.9 Dispute"). After receiving Plaintiff's response, the Court convened a video conference to consider the BCR 10.9 Dispute on 22 September 2021 (the "Conference"). All parties were represented by counsel at the Conference.

4.  After the Conference, on 23 September 2021, the Court entered its Order on Defendants' 10 September 2021 BCR 10.9 Dispute Summary and Scheduling Order (the "September 23 Order").[1] (Order on Defs.' 10 Sept. 2021 BCR 10.9 Dispute Summ. and Scheduling Order [hereinafter "Sept. 23 Order"], ECF No. 97.) In the September 23 Order, the Court concluded that Plaintiff "fail[ed] to timely comply with its disclosure and exchange obligations for expert testimony under the [Case Management Order ("CMO"), (Case Management Order, ECF No. 64),] and the [North Carolina Rules of Civil Procedure]." (Sept. 23 Order ¶ 8.) Although the Court denied Defendants' request to "exclude testimony from Plaintiff's three identified experts or any other expert testimony sought to be introduced by Plaintiff at trial as a sanction for Plaintiff's [misconduct]," (Sept. 23 Order ¶ 8), the Court did afford

---

[1] The Court incorporates herein by reference the findings and conclusions set forth in the September 23 Order.

Defendants relief. Specifically, the Court exercised its discretion to "extend the expert discovery period and dispositive motion deadline to alleviate any prejudice Defendants might otherwise suffer" and "to permit but not require Defendants to file a motion for sanctions to seek their attorneys' fees and costs incurred solely due to Plaintiff's failure to comply with its disclosure and exchange obligations under the CMO and the [North Carolina Rules of Civil Procedure]." (Sept. 23 Order ¶ 8.) The September 23 Order provided that Plaintiff would be "afforded a full opportunity to reply" should Defendants seek sanctions. (Sept. 23 Order ¶ 8.)

5. Defendants filed the current Motion with supporting materials on 11 October 2021, seeking an award of their attorneys' fees and costs under N.C. R. Civ. P. 37(b) for Plaintiff's discovery misconduct. In support of the Motion, Defendants tendered numerous exhibits as well as an affidavit of Defendants' lead counsel, Joseph A. Schouten, (Defs.' Mem. L. Supp. Mot. Sanctions Ex. K [hereinafter "Schouten Aff."], ECF No. 104.11). At the Court's request, (*see* Interim Order on Defs.' Mot. Sanctions, ECF No. 107), Defendants provided an additional affidavit from Defendants' counsel including clarifying information on 23 November 2021, (*see* ECF No. 110).[2]

6. Defendants support their request with billing records documenting all tasks and time worked for which Defendants seek attorneys' fees (the "Billing Statements"). (Schouten Aff. Ex. 4; Schouten Aff. Ex. 5.) The Billing Statements comprise two invoices, one for Aeroflow and one for Motif Medical. Each Billing Statement contains the date of the hours billed, the attorney or paralegal who conducted the respective

---

[2] The Court refers to the initial version of Joseph A. Schouten's affidavit filed on 11 October 2021 and located at ECF No. 104.11 for purposes of this Order.

task, a brief description of the task, the hours spent on the task, the rate charged for the task, and the total amount charged. (Schouten Aff. Ex. 4; Schouten Aff. Ex. 5.) The two Billing Statements reflect identical time entries and charges to each Defendant. (*See* Schouten Aff. Ex. 5.) In total, Defendants seek $23,982.00 in attorneys' fees for an asserted 75 hours of work performed by Defendants' counsel and paralegal in connection with the BCR 10.9 Dispute and this Motion. (Defs.' Mem. L. Supp. Mot. Sanctions 5 [hereinafter Defs.' Br.], ECF No. 104; *see* Schouten Aff. Ex. 4; Schouten Aff. Ex. 5.)

7. Plaintiff filed its response on 1 November 2021. (Pl.'s Resp. Br. To Defs.' Mot. Sanctions [hereinafter Pl.'s Resp.], ECF No. 105.) Plaintiff contends that Plaintiff's violation of the Court's CMO "was not willful and was based upon a misunderstanding of the [CMO] that was reasonable and made in good faith in light of all the circumstances." Plaintiff also asserts that Defendants have "suffered absolutely no material prejudice" from Plaintiff's violation and moreover that Defendants' fee request is "grossly excessive based on the sheer number of attorney hours billed." (Pl.'s Resp. 3.)

8. The Motion has been fully briefed and is ripe for determination. The Court concludes, in the exercise of its discretion, that a hearing would not assist the Court in ruling on the Motion and thus decides this matter without a hearing. *See* BCR 7.4 ("The Court may rule on a motion without a hearing.").

## II.

## CONCLUSIONS OF LAW

A.    Legal Standard

9.    Trial courts retain the inherent authority "to do all things that are reasonably necessary for the proper administration of justice." *Beard v. N.C. State Bar*, 320 N.C. 126, 129 (1987).  To that end, it is "within the inherent power of the trial court to order [a party] to pay [the opposing party's] reasonable costs including attorney's fees for failure to comply with a court order." *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674 (1987); *see Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (recognizing that the trial court's "authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process[,]" including "an assessment of attorney's fees" (cleaned up)); *Out of the Box Developers, LLC v. LogicBit Corp.*, 2014 NCBC LEXIS 7, at *9–10 (N.C. Super. Ct. Mar. 20, 2014) ("[The trial court's] inherent authority includes the power to sanction parties for failure to comply with court orders." (cleaned up)); *see also Cloer v. Smith*, 132 N.C. App. 569, 573 (1999) ("The trial court also retains inherent authority to impose sanctions for discovery abuses beyond those enumerated in [N.C. R. Civ. P.] 37.").

10.    Separate and apart from a trial court's inherent authority to impose monetary sanctions, N.C. R. Civ. P. 37(b)(2) authorizes an award of reasonable expenses, in addition to other possible sanctions, when "a party or an officer, director, or managing agent of a party" fails to obey a court order regarding discovery.  *See* N.C. R. Civ. P. 37(b)(2).  In such circumstances, "the court shall require the party

failing to obey the order to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." *Id.* As this Court has previously recognized, when a party has failed to obey a discovery order, "an award of reasonable costs is mandatory unless the failure is substantially justified or an award would be unjust due to other circumstances." *Red Valve, Inc. v. Titan Valve, Inc.*, 2019 NCBC LEXIS 57, at \*75 (N.C. Super. Ct. Sept. 3, 2019), *aff'd per curiam*, 376 N.C. 798 (2021) (emphasis omitted).

11. Generally, an award of attorneys' fees requires "that the trial court enter findings of fact as to the time and labor expended, skill required, customary fee for like work, and experience or ability of the attorney based on competent evidence." *Couch v. Private Diagnostic Clinic*, 146 N.C. App. 658, 672 (2001). When attorneys' fees are awarded as a sanction, there must be "findings to explain . . . how the court arrived at" the awarded amount. *Dunn v. Canoy*, 180 N.C. App. 30, 50 (2006).

12. The Court's award of expenses, including attorneys' fees, must be reasonable. *See* N.C. R. Civ. P. 37(b)(2); *Daniels*, 320 N.C. at 674. An award of monetary sanctions should be limited to those fees and expenses incurred as a result of the sanctioned party's improper conduct. *See, e.g.*, N.C. R. Civ. P. 37(b)(2) (providing that the court "shall require the party failing to obey the [discovery] order to pay the reasonable expenses, including attorney's fees, caused by the failure[.]"); *Daniels*, 320 N.C. at 674–75 (concluding that the trial court had the "inherent power to tax [the] plaintiff with the reasonable costs, including attorney's fees incurred by

[the] defendant" at a trial in which "plaintiff's counsel failed to comply with the court's order prohibiting the introduction of [certain] evidence").

13. The amount of attorneys' fees to be awarded is left to the trial court's discretion and "will not be disturbed without a showing of manifest abuse of [that] discretion." *Bryson v. Cort*, 193 N.C. App. 532, 540 (2008). A trial court will only be held to have abused its discretion "where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *E. Brooks Wilkins Family Med., P.A. v. WakeMed*, 244 N.C. App. 567, 578 (2016) (quoting *Couch*, 146 N.C. App. at 667–68).

B.   Plaintiff's Conduct

14. Plaintiff contends that its acknowledged violation of the CMO was substantially justified and that an award of expenses against it would be unjust in these circumstances. Plaintiff asserts that, although the parties reflected their agreement to exchange expert reports in their Case Management Report ("CMR"), (Case Management Report 1, 3, ECF No. 62), Plaintiff did not remember that agreement in August and early September 2021 as the CMO's deadline for expert disclosures approached. Plaintiff then argues that because the CMO did not state that the parties had agreed to exchange reports—only that "[i]f the parties elect to exchange expert reports," they must do so on or before the date of expert disclosure— Plaintiff was substantially justified in believing that it had no obligation to provide expert reports under the CMO when it reviewed the CMO as the disclosure deadline loomed. (Pl.'s Resp. 4–6.) The Court disagrees.

15. First, the Court has already determined that Plaintiff's construction of the CMO fails and that Plaintiff violated the CMO. (Sept. 23 Order ¶ 6.) Indeed, the CMR expressly states that the parties agreed that "initial experts and response experts shall submit a written report to go along with their resumes and all materials they relied on that were not previously produced in discovery," (Case Management Report 3), and the CMO indicates that "[i]f the parties elect to exchange expert reports"—which they agreed to do in the CMR—those expert reports would be provided in accordance with the requirements of the CMO, (Case Management Order 5). Plaintiff's strained interpretation does not permit it to avoid the obligations attendant to the agreement it admittedly made, whether forgotten or not, and in no way substantially justifies its failure to provide expert reports or full and complete expert disclosures as required under the CMO.

16. This conclusion is further supported by Plaintiff's acknowledgement of its agreement to exchange expert reports and full and complete expert disclosures in the weeks and months leading up to the CMO's 6 September 2021 expert disclosure deadline. First, in March 2021, Plaintiff acknowledged in its interrogatory responses that it would comply with the CMO and stated further that "[a]ppropriate expert reports, upon agreement, or answers to this interrogatory, containing the foundation and substance of the facts and opinions of the experts will be delivered at the time of the designation." (Defs.' Mem. L. Supp. Mot. Sanctions Ex. A ¶ 3, ECF No. 104.1.) Then, on 30 July 2021, mere weeks before the expert disclosure deadline, Plaintiff's counsel indicated in negotiations over a N.C. R. Civ. P. 30(b)(6) deposition that

Plaintiff's "expert witness might need some of the information from this [N.C. R. Civ. P.] 30(b)(6) to deliver a *fully-informed opinion*," (Defs.' Mem. L. Supp. Mot. Sanctions Ex. B, ECF No. 104.2 (emphasis added)).

17. Despite these acknowledgements, however, Plaintiff disingenuously argues that it was unaware of its agreement to provide expert reports until after it submitted expert disclosures on 6 September 2021. (Pl.'s Resp. 5.) But even then, those purported disclosures did not include the substance of the experts' opinions, the experts' qualifications, or the facts, data, and materials on which the experts relied to form their undisclosed opinions—all basic requirements under the CMO and N.C. R. Civ. P. 26(b)(4), not to mention information Plaintiff promised in its interrogatory responses. And even if the Court could credit Plaintiff's contention that it did not recall its agreement to exchange expert reports, Plaintiff's failure to give even a cursory review to the CMR containing that agreement when confronted with the CMO's language requiring certain action "*[i]f* the parties elect to exchange expert reports," (Case Management Order 5 (emphasis added)), hardly justifies Plaintiff's conduct.

18. In short, Plaintiff's effort to rationalize its disregard of its discovery obligations is unpersuasive. Plaintiff not only failed to comply with the CMO's requirement to provide expert reports by the expert disclosure deadline, but the disclosures Plaintiff did provide were inconsistent with Plaintiff's expert disclosure obligations under the CMO, N.C. R. Civ. P. 26(b)(4), and Plaintiff's representations in its interrogatory responses. Thus, the Court concludes, in the exercise of its

discretion, that Plaintiff has not shown that its failure to comply with the CMO was substantially justified or that other circumstances make an award of expenses unjust. Accordingly, the Court further concludes, in the exercise of its discretion, that sanctions in the form of an award of attorneys' fees under N.C. R. Civ. P. 37(b) and the Court's inherent authority are appropriate in the circumstances here.

19. The Court now turns to an examination of Defendants' request for $23,982.00 in attorneys' fees.

C. <u>Reasonableness of Rates</u>

20. The Court first analyzes the reasonableness of the hourly rates charged by Defendants' counsel.

21. The reasonableness of attorneys' fees in this State "is governed by the factors found in Rule 1.5 of the Revised Rules of Professional Conduct of the North Carolina State Bar." *Ehrenhaus v. Baker*, 216 N.C. App. 59, 96 (2011). "The factors to be considered in determining whether a fee is clearly excessive" under Rule 1.5(a) of the Revised Rules of Professional Conduct include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

N.C. Rev. R. Prof. Conduct 1.5(a).

22. Defendants' counsel charged at the following hourly rates for the fees it seeks in the Motion: (i) $400 for Joseph A. Schouten, a partner with approximately seventeen years' experience; (ii) $350 for Haley Roper Wells, a partner with approximately thirteen years' experience; (iii) $235 for Jordan Spanner, an associate with approximately three years' experience; and (iv) $185 for Elizabeth A. Stallings, a paralegal with over twenty years' experience. (Schouten Aff. ¶¶ 2, 6, 8–9, 11; Schouten Aff. Ex. 3.)

23. Plaintiff does not object to the hourly rates Defendants' attorneys have charged. Based on Defendants' counsel's affidavit, the previous holdings of this Court, and the Court's knowledge of the hourly rates of local attorneys providing similar services in this locality, the Court concludes that Defendants' attorneys' rates are reasonable, clearly not excessive, and within those "customarily charged in [this] locality for similar legal services." N.C. Rev. R. Prof. Conduct 1.5(a)(3); *see Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2018 NCBC LEXIS 69, *21–23 (N.C. Super. Ct. July 6, 2018) (holding hourly rates charged in Buncombe County of $230 to $405 for attorneys and $150 to $250 for paralegals and support staff to be reasonable); *see also, e.g.*, *Simpson v. Simpson*, 209 N.C. App. 320, 328 (2011) (recognizing that, in awarding attorneys' fees, a trial court may "take judicial

notice of the customary hourly rates of local attorneys performing the same services and having the same experience.").[3]

D. Time and Labor Expended by Defendants' Counsel

24. The Court next evaluates the time and labor expended by Defendants' counsel. *See* N.C. Rev. R. Prof. Conduct 1.5(a)(1). Plaintiff argues that much of the time identified for payment on the Billing Statements should be adjusted because the billing entries reflect an excessive amount of time spent on the BCR 10.9 Dispute and the Motion.

25. Defendants seek to recover $23,982.00 in attorneys' fees arising from 75 hours of attorney and paralegal time spent between 7 September and 8 October 2021 in connection with the BCR 10.9 Dispute and the Motion. (Defs.' Br. 5; *see* Schouten Aff. Ex. 4; Schouten Aff. Ex. 5.) Defendants' counsel avers that he and his colleagues incurred 42.2 hours of this time, totaling $14,885.00, between September 7 and September 22 for work performed in connection with the BCR 10.9 Dispute as follows:

---

[3] Defendants' requested hourly rates here are also within the range of those this Court has found reasonable for complex business litigation in North Carolina. *See, e.g.*, *W&W Partners, Inc. v. Ferrell Land Co.*, 2020 NCBC LEXIS 35, at *10 (N.C. Super. Ct. Mar. 23, 2020) (finding attorney hourly rate of $526.50 reasonable); *Red Valve*, 2019 NCBC LEXIS 58, at *19–20, 32–36 (finding attorney hourly rates between $250 and $450 reasonable); *Bradshaw v. Maiden*, 2018 NCBC LEXIS 98, at *12–13 (N.C. Super. Sept. 20, 2018) (finding attorney hourly rate of $450 reasonable); *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2018 NCBC LEXIS 69, at *21 (N.C. Super. Ct. July 6, 2018) (finding attorney hourly rates of $375 to $405 reasonable); *In re Newbridge Bancorp S'holder Litig.*, 2016 NCBC LEXIS 91, at *46–47 (N.C Super. Ct. Nov. 22, 2016) (concluding that "a typical and customary [attorney] hourly rate charged in North Carolina for complex commercial litigation . . . ranges from $250 to $475"); *In re Pike Corp. S'holder Litig.*, 2015 NCBC LEXIS 95, at *22–23 (N.C. Super. Ct. Oct. 8, 2015) (finding attorney hourly rates of up to $550 to be within but at the higher end of, reasonable rates for complex business litigation in North Carolina). The Court also takes judicial notice that attorney and paralegal billing rates in North Carolina have increased since many of these decisions were rendered.

(i) Schouten 23.8 hours ($9,520.00); (ii) Wells 9.4 hours ($3,290.00); (iii) Spanner 8.2 hours ($1,927.00); and (iv) Stallings .8 hours ($148.00). (*See* Schouten Aff. Ex. 4; Schouten Aff. Ex. 5.) Defendants' counsel further avers that he and his colleagues incurred 28.4 hours, totaling $7,764.00, between September 23 and October 8 for work performed in connection with the Motion as follows: (i) Schouten 3.4 hours ($1,360.00); (ii) Wells 4.6 hours ($1,610.00); and Spanner 20.4 hours ($4,794.00). (*See* Schouten Aff. Ex. 4; Schouten Aff. Ex. 5.) Defendants' counsel also seek 4.4 hours that Ms. Wells (2.6 hours) and Ms. Spanner (1.8 hours) incurred on 22 September 2021, which the Court treats separately below.

26. The Court has carefully reviewed Defendants' Billing Statements, and contrary to Plaintiff's contention, concludes, in the exercise of its discretion, that most of the time Defendants' attorneys and paralegal spent in connection with the BCR 10.9 Dispute and this Motion was reasonable under the circumstances and should be awarded.

27. The Court, however, in the exercise of its discretion, declines to award the following requested fees because the time incurred does not relate to the BCR 10.9 Dispute or the Motion but instead appears to relate to the litigation more broadly:

   a. Ms. Wells' time entries on September 22 for 2.6 hours ($910.00) for "Formulation of strategy; client conference re discovery matters; consideration of needed discovery";

   b. Ms. Spanner's time entries on September 22 for 1.8 hours ($423.00) for "Continued preparation and development of strategy re Memorandum in

Support of Motion for Summary Judgment; analysis of issues re existence of a trade secret, misappropriation of trade secret, and unjust enrichment."

28.  The Court also elects, in the exercise of its discretion, to adjust the following time entries because the Court concludes that the time incurred was excessive for the tasks performed:

a.  Mr. Schouten's time entries between September 13 and September 21 totaling 12.8 hours for tasks performed after the BCR 10.9 Dispute was sent through the day before the Conference shall be reduced to 9 hours (thereby reducing Defendants' requested fees for this work by $1,520.00);

b.  Ms. Spanner's time entries from September 23 to October 8 totaling 20.4 hours for tasks performed in connection with the Motion shall be reduced to 14 hours (thereby reducing Defendants' requested fees for this work by $1,504.00).

29.  Except as provided above, the Court concludes, in the exercise of its discretion, that no other adjustments to Defendants' requested attorneys' fees are necessary or appropriate and that the fees sought for these tasks are reasonable and should be awarded.

30.  The Court thus finds, in the exercise of its discretion, that Defendants should be awarded reasonable attorneys' fees for 60.4 hours of attorney and paralegal time spent in connection with the BCR 10.9 Dispute and the Motion in the total

amount of $19,625.00 as follows: Schouten 23.4 hours ($9,360.00); Wells 14 hours ($4,900.00); Spanner 22.2 hours ($5,217.00); Stallings .8 hours ($148.00).

E.    Remaining N.C. Rev. R. Prof. Conduct 1.5 Factors

31.    The Court finds that the remaining factors set forth in Rule 1.5(a) of the Revised Rules of Professional Conduct merit the award of attorneys' fees ordered herein.

32.    As to that portion of N.C. Rev. R. Prof. Conduct 1.5(a)'s first factor considering "the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," the Court finds that the work required in connection with the BCR 10.9 Dispute and the Motion was challenging and required a high degree of skill, experience, and specialized knowledge. Accordingly, this factor weighs in favor of the attorneys' fees awarded hereunder.

33.    Considering N.C. Rev. R. Prof. Conduct 1.5(a)'s seventh factor—"the experience, reputation, and ability of the lawyer or lawyers performing the services"—the Court finds that Defendants' attorneys have significant experience in complex business litigation matters and have shown great ability in investigating the circumstances of the BCR 10.9 Dispute and the Motion. The Court concludes that this factor also weighs in favor of the Court's award of attorneys' fees in this case.

34.    Finally, the Court has considered the remaining factors of N.C. Rev. R. Prof. Conduct 1.5(a)—to the extent they can be applied to an award of attorneys' fees in the context of sanctions—and finds that the attorneys' fees awarded herein are reasonable in light of these factors as well.

## III.

## CONCLUSION

35.   **WHEREFORE**, the Court, in the exercise of its discretion, hereby **GRANTS in part** and **DENIES in part** Defendants' Motion for Sanctions as more particularly set forth above and **ORDERS** Plaintiff to pay Defendants' reasonable attorneys' fees in the total amount of $19,625.00 within thirty (30) days of the entry of this Order.

**SO ORDERED**, this the 15th day of December, 2021.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge