**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1835

KEYES LAW FIRM, LLC,

> Plaintiff – Appellee,

v.

PAUL J. NAPOLI, individually; NAPOLI SHKOLNIK PLLC; NAPOLI SHKOLNIK & ASSOCIATES, PLLC; PAUL NAPOLI LAW PLLC; NAPOLI LAW PLLC,

> Defendants – Appellants,

and

NAPOLI BERN RIPKA SHKOLNIK, LLP; NAPOLI BERN, LLP; NAPOLI, BERN & ASSOCIATES, LLP; NAPOLI BERN RIPKA, LLP; NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES, LLP; PASTERNACK TILKER NAPOLI BERN LLP; NAPOLI, KAISER, BERN & ASSOCIATES, LLP; MARC J. BERN & PARTNERS LLP,

> Defendants.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Julie R. Rubin, District Judge.  (1:17−cv−02972−JRR)

Argued:  September 24, 2024                    Decided:  October 24, 2024

Before DIAZ, Chief Judge, and WILKINSON and BERNER, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Diaz and Judge Berner joined.

_____

**ARGUED:**  Henry Willett, III, CHRISTIAN & BARTON, LLP, Richmond, Virginia, for Appellants.  David Jonathan Shuster, Louis Paul Malick, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Timothy C. Lynch, OFFIT KURMAN, PA, Timonium, Maryland, for Appellants.  Jean E. Lewis, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellee.

_____

WILKINSON, Circuit Judge:

Napoli Law contests the sanctions award that the District Court of Maryland imposed in light of the Napoli firm's abuse of process in two lawsuits filed in the State of New York. The New York lawsuits claimed that the ongoing action against Napoli in Maryland was frivolous and sought an order for its dismissal. We think this misconduct of the law firm was in direct defiance of the Maryland district court's adjudicative function, and that the court was within its discretion in imposing the sanctions award.

## I.

## A.

Napoli Law is a national firm with extensive experience in class action and mass tort litigation. Keyes Law is a local firm based in Maryland that represents clients with asbestos exposure claims. Between 2011 and 2014, Keyes faced a large influx of asbestos cases and referred over 2,000 of them to Napoli. Napoli agreed to handle the litigation for these cases and share part of the contingency fees with Keyes. Initially, Napoli paid Keyes its portion of the fees, but over time the payments dwindled and eventually stopped. After repeatedly demanding payment to no avail, Keyes was forced to seek relief in federal court.

On October 9, 2017, Keyes filed a breach of contract suit in the District of Maryland, along with related claims. The district court denied Napoli's motion to dismiss on August 14, 2018. Dissatisfied with this, Napoli filed two nearly identical suits in New York state court a few months later, asserting that the federal action was a "malicious and deliberate" abuse of process. J.A. 301. The complaints asked the New York court to "order that

3

Defendants discontinue their lawsuit against Plaintiff" in the District of Maryland. *Id.* at 302.

Around the same time, Napoli also began obstructing the district court proceedings from within. On April 18, 2019, the court admonished Napoli for defying its discovery orders and threatened sanctions for continued noncompliance. Napoli still refused to comply. As a result, the district court imposed sanctions on Napoli and awarded Keyes $316,873 in attorney's fees and costs.

A jury returned a verdict for Keyes in the Maryland case on December 19, 2019. Keyes was awarded $861,062 in damages. We affirmed both the discovery sanctions and the judgment on the merits with a minor adjustment to the post-judgment interest rate. *See Keyes Law Firm, LLC v. Napoli Bern Ripka Shkolnik, LLP*, No. 19-2173, 2022 WL 3099848 (4th Cir. Aug. 4, 2022).

B.

After the first appeal, the district court imposed additional sanctions on Napoli for filing the New York lawsuits and engaging in other bad faith misconduct. The court found it "obvious" that Napoli filed the New York suits to "disrupt the litigation" in Maryland.[1] J.A. 455. It emphasized that the complaints sought "to have a state court enjoin an action in federal court," a request that even a "first-year constitutional law student" would know to be improper. *Id.* The full list of Napoli's sanctioned misconduct is long and troubling. It

---

[1] The district court adopted a magistrate judge's Report and Recommendation in its entirety. J.A. 486. We therefore refer to the magistrate judge's findings as the findings of the district court.

4

included repeated defiance of court orders, frivolous motions, and last minute document dumps, to name just a few examples. The district court found by "clear and convincing evidence" that all this was "intentional misconduct" designed to "harass" Keyes and "waste the time and resources" of the court. *Id.* at 486. It therefore awarded Keyes an additional $1,050,872 in attorney's fees and costs.

The district court imposed these sanctions over two objections. First, it rejected the claim that it lacked authority to sanction parties for misconduct occurring in other courts. It held that it had inherent power to do so if the misconduct had an "obvious linkage" to its case. J.A. 457. Second, the court dismissed the argument that it failed to adequately address the factors that must be considered when calculating reasonable attorney's fees under a prevailing party statute. *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). It insisted that it did in fact consider all the factors even though it found some of them "irrelevant" to a sanctions award. J.A. 486.

We now consider these two objections on appeal.

## II.

Napoli argues that the Supreme Court's decision in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) limited a district court's inherent power to sanction misconduct in other courts to instances where the misconduct is in direct defiance of a discrete court order. We think, however, that district courts are not powerless to act in the face of contumacious conduct so expressly designed to undercut, and even sabotage, their adjudicative authority.

Article III's grant of "judicial Power" has long been understood to vest federal courts with certain "implied powers" inherent to "courts of justice from the nature of their

5

institution." *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812). At the core of this inherent power is the authority to "fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). Without it the "judicial Power" would be no "Power" at all. It would be but a shell, lacking the substance courts need to protect their role within our constitutional structure. For this reason, the sanctions power is a mainstay for "protecting the due and orderly administration of justice" and "maintaining the authority and dignity of the court." *Cooke v. United States*, 267 U.S. 517, 539 (1925); *see also United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993).

*Chambers* made clear that the inherent power to sanction extends to "abuses of process occurring beyond the courtroom, such as disobeying the court's orders." 501 U.S. at 57. Napoli reads *Chambers* to say that the sanctions power reaches beyond the courtroom *only* when a party disobeys court orders. The first problem with this argument is self-evident. "Such as" introduces an illustration, not a restriction. And given that the facts of that case involved a party disobeying a court order "to maintain the status quo," it is no mystery why *Chambers* provided such an example. *Id.*

Even putting language aside, one need not look far to see that Napoli's interpretation of *Chambers* contradicts other Supreme Court authority. *Chambers* itself relied on *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399 (1923), a case where the Supreme Court affirmed sanctions against a party which tried to undermine a court's judgment by asking a district court in another circuit to enjoin the judgment's enforcement. The party's lawsuit technically did not violate any court order. The circuit court had affirmed the district court's

6

judgment, but the mandate had not yet issued and the judgment remained stayed pending appeal. Nevertheless, the circuit court had the power to impose sanctions because the party's lawsuit "was in contempt of its jurisdiction." *Id.* at 426. It was plainly "instituted to halt and defeat the decree" of the court, obstructing the "exercise of its appellate jurisdiction." *Id.*

Even more on point is *New Orleans v. The Steamship Co.*, 87 U.S. (20 Wall.) 387 (1874). In that case there was no court order at all. The sanctioned party instead tried to sidestep an ongoing litigation in a federal circuit court by seeking relief in a state forum. The circuit court held the litigant in criminal contempt and imposed a fine. *Id.* at 389–90. The Supreme Court agreed, finding it "grossly disrespectful to the Circuit Court to invoke the interposition of the State court as to anything within the scope of the litigation already pending." *Id.* at 392–93.

These cases confirm what the most basic premises of our judicial structure demand. In our system when a "court has jurisdiction it has a right to settle every question which occurs in the case." *Buck v. Colbath*, 70 U.S. (3 Wall.) 334, 337 (1865). But it cannot "settle" that which remains under relentless collateral attack. To ask a district court to foresee and expressly prohibit through court order every conceivable abuse of process is to ask it to chase its tail. Litigation is complicated enough as it is. District courts should not have to wage a sprawling, three-front war to defend their rightful role.

The Fifth Circuit has underscored both the enabling and the limiting features of the Supreme Court's *Chambers* decision. In *FDIC v. Maxxam, Inc.*, 523 F.3d 566 (5th Cir. 2008), the Fifth Circuit reversed sanctions imposed on the FDIC in connection with a

7

parallel administrative proceeding because the administrative action was not in "direct defiance of the sanctioning court." *Id.* at 591. Napoli latches onto this "direct defiance" rule, arguing that it requires the violation of a court order. But the Fifth Circuit made clear that sanctions could be imposed for "disobedience of the district court's orders *or* direct defiance of the sanctioning court." *Id.* (emphasis added). It also expressly distinguished the issue before us, emphasizing that the separate proceeding did not "threaten the court's own judicial authority or proceedings." *Id.* at 593.

If Napoli finds fault with the district court's rulings, it can take an appeal. Its recourse lies with the Fourth Circuit, not the state courts of New York. Napoli asks that we embrace the proposition that a single lawsuit may routinely spawn two others. But no. Napoli's New York lawsuits were in direct defiance of the district court's authority. Both suits came just months after the Maryland district court denied Napoli's motion to dismiss. Both suits asserted that the Maryland district court proceedings were "frivolous and malicious," a claim that not only fell squarely within the scope of the ongoing Maryland litigation but one that had been repeatedly rejected by the district court. J.A. 299. Raising it again in state court demonstrated a plain disregard for the district court's jurisdiction. Making matters worse, the prayer for relief in both suits requested "an order that Defendants discontinue their lawsuit against Plaintiff" in the district court. *Id.* at 302. All this was far more than an "obvious linkage." In every practical sense Napoli asked a state court in New York to overrule a federal district court in Maryland. It is hard to imagine a more flagrant challenge to the district court's authority or a more obvious spur to litigation hither and yon.

8

III.

Napoli also argues that the sanctions are invalid because the district court failed to apply the factors used for calculating a fee award to a prevailing party. *See, e.g.*, 42 U.S.C. § 1988. We conclude that these factors do not apply to fee awards for costs incurred due to misconduct. The relevant inquiry is whether there is a sufficient causal link between the sanctioned misconduct and the fees awarded. The district court dutifully applied this standard. We therefore affirm the sanctions award in its entirety.

In *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017), the Supreme Court articulated the standard for calculating fee awards imposed as a sanction for bad-faith conduct. It held that the award should redress the innocent party for the legal fees it incurred "because of" the other side's malfeasance. *Id.* at 108. In other words, the district court must "establish a causal link" between the sanctioned behavior and the fees awarded. *Id.* This causal test reflects the remedial nature of sanction awards. *See id.*

Napoli insists we instead apply the factors used for fee awards to prevailing parties, relying on our decision in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978). *Barber*, however, had nothing to say about sanction awards. It addressed a standard fee-shifting statute providing "reasonable attorneys' fees" to the successful party. *Id.* at 226. In that context, we held that district courts must "consider and make detailed findings with regard to twelve factors relevant to the determination of reasonable attorneys' fees." *Id.* The "most critical factor" is comparing the fees to "the degree of success obtained." *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998).

9

Focusing on the "success obtained" is entirely fitting for standard fee-shifting statutes. Congress enacted fee-shifting statutes "to promote citizen enforcement of important federal policies." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1986). It did not enact them to hand out unwarranted "windfalls to attorneys." *Blum v. Stenson*, 465 U.S. 886, 894 (1984). The "job of an advocate is to achieve beneficial outcomes for a client." *Pellegrin v. Nat'l Union Fire Ins. of Pittsburgh* (*In re Abrams & Abrams, P.A.*), 605 F.3d 238, 247 (4th Cir. 2010). It would be plainly excessive to approve fee arrangements charging non-prevailing parties more than a case was conceivably worth.

In contrast, it makes little sense to ask if a sanction for misconduct is justified by the "success obtained." The purpose of sanctions is not to reward lawyers for the value of their work. It is to compensate a litigant for the harm inflicted by his adversary's wrong. *See Goodyear*, 581 U.S. at 108. Hence the need to reimburse the litigant for *all* the fees it was forced to incur because of the misconduct.

This does not mean that a victim of misconduct can be reimbursed for an unlimited amount of fees. As *Goodyear* makes plain, the sanctions award is limited to fees attributable to the wrong. *Id.* That means that the fees incurred must be reasonably necessary and proportionate to defend against the misconduct. The focus, however, remains on making the victim whole. Not on what amount of fees would have been reasonable relative to the value of or the degree of success achieved in the case.

Under *Goodyear*, district courts are tasked with achieving "rough justice," not "auditing perfection," and their fee estimates are "entitled to substantial deference on

10

appeal." 581 U.S. at 110. The court here was well within its "broad discretion" under this standard. *Id.* at 104. It did not award fees willy-nilly or without reference to the harm occasioned by Napoli's actions. The court instead meticulously categorized the "excessive attorneys' fees and costs" that Keyes was forced to incur because of Napoli's misconduct. J.A. 463–64. Napoli does not contend that these estimates lacked a causal connection to its wrongdoing, and we refuse to second guess the district court's careful analysis on appeal.[2]

IV.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

---

[2] In hopes that the trial court's sanctions award will have a reformative effect on appellants' future conduct, we shall exercise our own discretion and decline to impose sanctions with regard to this appeal.

11